ATTORNEY GENERAL ex rel DEPARTMENT OF NATURAL
RESOURCES v HURON COUNTY ROAD COMMISSION

Docket Nos. 147255, 159839. Submitted April 4, 1995, at Lansing.
Decided August 4, 1995, at 9:00 A.M. Leave to appeal sought.

The Attorney General, on the relation of the Department of
Natural Resources, brought an action in the Huron Circuit
Court against the Huron County Road Commission and others,
seeking declaratory and injunctive relief against the dredging,
deepening, and extension of the Philp Drain. The court, M.
Richard Knoblock, J., granted summary disposition for the
defendants, rejecting claims by the plaintiff that permits under
the Wetland Protection Act, MCL 281.701 *et seq.*; MSA
18.595(51) *et seq.*, and the Inland Lakes and Streams Act, MCL
281.951 *et seq.*; MSA 11.475(1) *et seq.*, were required for the
project and that the plaintiff had shown a prima facie case
under the Michigan Environmental Protection Act, MCL
691.1201 *et seq.*; MSA 14.528(201) *et seq.*, justifying judicial
intervention. The plaintiff filed two appeals, which the Court of
Appeals consolidated.

The Court of Appeals *held:*

1. Section 6(h)(ii) of the Wetland Protection Act, MCL
281.706(2)(h)(ii); MSA 18.595(56)(2)(h)(ii), provides that a permit
is not required for the maintenance, operation, or improve-
ment, including straightening, widening, or deepening, of a
drain that, like the Philp Drain, is legally established pursuant
to the Drain Code, MCL 280.1 *et seq.*; MSA 11.1001 *et seq.*, and
necessary for the production or harvesting of agricultural
products. Maintenance, operation, or improvement of a drain
does not consist exclusively of straightening, widening, or deep-
ening of the drain, but may include other activities such as the
extension of the drain in this case.

2. Section 4(g) of the Inland Lakes and Streams Act, MCL
281.954(g); MSA 11.475(4)(g), provides that a permit is not

REFERENCES

Am Jur 2d, Appellate Review §§ 169, 700; Drains and Drainage
Districts § 37; Pollution Control § 534, 535.

See ALR Index under Drains and Drainage; Environmental Law;
Summary Judgment.

required for maintenance and improvement of a drain that, like the Philp Drain, was established before January 1, 1973, or a drain that was constructed before that date.

3. The trial court did not err in determining that a prima facie case for injunctive relief under the Michigan Environmental Protection Act was not established because the effect of the challenged activity on the environment did not rise to a level of impairment that justifies an injunction.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — DECLARATORY AND INJUNCTIVE RELIEF — APPEAL.

A grant of summary disposition in an action for declaratory and injunctive relief following extensive hearings and detailed findings of fact may be treated on appeal as a decision after a bench trial; the trial court's factual findings will be reviewed for clear error, and its legal rulings will be reviewed de novo.

2. DRAINS — MAINTENANCE AND IMPROVEMENT — WETLAND PROTECTION ACT — INLAND LAKES AND STREAMS ACT — PERMITS.

A permit under the Wetland Protection Act or the Inland Lakes and Streams Act is not required for the dredging, deepening, and extension of a drain legally established pursuant to the Drain Code before January 1, 1973, and necessary for the production or harvesting of agricultural products (MCL 280.1 *et seq.*, 281.706[2][h][ii], 281.954[g]; MSA 11.1001 *et seq.*, 18.595[56] [2][h][ii], 11.475[4][g]).

3. ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — INJUNCTIONS.

To determine whether a plaintiff in an action for injunctive relief under the Michigan Environmental Protection Act has established a prima facie case, the trial court must determine whether a natural resource is involved and whether the effect of the challenged activity on the environment rises to the level of impairment that would justify the court's injunction (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

4. ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — INJUNCTIONS.

A court in determining whether a challenged activity constitutes an environmental risk that justifies judicial intervention pursuant to the Michigan Environmental Protection Act should consider: whether the natural resource is rare, unique, endangered, or of historical significance; whether the resource is readily replaceable; whether the proposed action will have any significant consequential effect on other natural resources; and

whether the direct or consequential effect on plants or animals will affect a critical number, considering the nature and location of the wildlife affected (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Thomas J. Emery* and *Stephen M. Rideout,* Assistant Attorneys General, for the plaintiff.

*Hubbard, Fox, Thomas, White & Bengston, P.C.* (by *Geoffrey H. Seidlein*), for the defendants.

Before: CORRIGAN, P.J., and MARKEY and J. R. ERNST,* JJ.

CORRIGAN, P.J. Plaintiff appeals as of right the dismissal of its complaint for injunctive and declaratory relief in these consolidated cases. The complaint alleged that a drainage project in the Philp Drain Drainage District in Huron County violated the Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.,* the Inland Lakes and Streams Act (ILSA), MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.,* and the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* Docket No. 147255 concerns the WPA and ILSA claims, and Docket No. 159839 involves the MEPA claim. Plaintiff voluntarily dismissed the other counts of the complaint. We affirm.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

The Philp Drain, a six- or seven-mile stretch of Willow Creek in Huron County, was designated as a drain in 1896. The drain had not been improved since its establishment, except by private individu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

als. The drain serves 21,000 acres, ninety percent of which is agricultural. It is also an outlet for eleven other established drains in Huron County. The Michigan Department of Natural Resources (DNR) owns about 3,000 acres in this district, two-thirds of which is rented to farmers.

In 1988, local farmers petitioned to improve the Philp Drain. The drain was choked with weeds, stagnant, full of silt, and dirty. The fish were dying. One farmer described the Philp running through his land as a "5,000 gallon cesspool." The farmers principally were concerned with the flooding of the Rapson area, an agricultural area on the banks of Willow Creek, but downstream from the Philp Drain. The Rapson flooding was blamed on the Philp's slow drainage rate and its lack of an adequate outlet. Another concern was flooding in areas serviced by other county drains that emptied into the Philp. These drains were inoperable because the Philp was in such poor condition and draining so slowly that the outlets of the other drains were "lower" than the Philp. Thus, they could not empty into the Philp. Moreover, the farmers noted that the flooding not only damaged crops, it was also dangerous. The flooding backed up the farmers' drain tiles, causing underground drainpipes to blow out under pressure and gouge treacherous two-foot-deep holes in the farmland.

Upon the filing of this petition, a board of determination was convened in February 1989 to determine the necessity of the proposed project. Notice of this meeting was sent to every landowner within the drainage district, including the DNR. At the hearing, the board determined that the proposed improvement was necessary and conducive to the public health, convenience, and welfare. Two landowners challenged this determination in the circuit court and lost. The DNR did not join this

challenge or file its own challenge. The board was reconvened a month later to add new lands to the drainage district. Again, all landowners, including the DNR, were notified of this meeting.

On the basis of the board's determination, defendant Vernon Rounds, the Huron County Drain Commissioner, proposed to extend the Philp Drain downstream, and to add a 1,200-foot enclosed branch near Rapson to alleviate flooding in that area. The project entailed dredging and deepening the drain. The finished drain would span thirteen miles.

Rounds and other representatives of the drain commission met with DNR and United States Fish and Wildlife Service representatives on several occasions. The first of these meetings occurred in September 1989. There was conflicting testimony regarding whether Rounds was told that the county would have to apply for permits under the WPA or the ILSA. County representatives recalled that the DNR assured them that a wetlands permit would not be needed for this project. However, the DNR representatives recalled that they informed the drain commission that a wetlands permit would be needed. In any event, Rounds never applied for or received a permit from the DNR for the project.

In 1991, before the project commenced, the board held two other meetings and also arranged the sale of $1.5 million in bonds to finance the project. The DNR, as a landowner in the district, was notified of these events. After the funds were raised, final notice was sent in June 1991 to all landowners, including the DNR, before work on the drain began.

Plaintiff filed a complaint for injunctive and declaratory relief on July 12, 1991, ten days before construction on the project was to begin. The

complaint alleged in part that the proposed drain violated the WPA, the ILSA, and the MEPA. The court conducted an evidentiary hearing on July 16, 1991, on plaintiff's motion for a preliminary injunction. It conditionally granted plaintiff's motion, provided that plaintiff posted sufficient security to pay costs incurred by defendants as a result of plaintiff's undue delay in seeking the injunction. Plaintiff, however, did not post the security. Consequently, the court entered an order denying plaintiff's motion. Plaintiff's application for leave to appeal to this Court was denied.

Plaintiff subsequently moved for summary disposition of counts I (WPA) and II (ILSA) of the complaint. The trial court conducted a lengthy evidentiary hearing. The court held that defendants' activities fell under exceptions to the permit requirements of both the WPA and the ILSA. The court therefore ordered summary disposition in favor of defendants of counts I and II of plaintiff's complaint.

Plaintiff then moved for summary disposition of the MEPA claim. Another evidentiary hearing was held, after which the court ruled that plaintiff failed to establish a prima facie case under the MEPA. Accordingly, it granted summary disposition for defendants of this count. By this time, the drain project had been completed.

Although the trial court technically heard these issues on plaintiff's motions for summary disposition, it also held extensive evidentiary hearings and made detailed findings of fact. Accordingly, we consider the disposition below as though a bench trial had been conducted. The trial court's factual findings will be reviewed for clear error, *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 410; 531 NW2d 168 (1995), and its legal rulings will be reviewed de novo. *Madison v De-*

*troit,* 208 Mich App 356, 358; 527 NW2d 71 (1995). Since plaintiff has no right to a jury trial on equitable actions for injunctive relief, *Ins Comm'r v Accident Fund,* 173 Mich App 566, 586; 434 NW2d 433 (1988), and a court sitting in equity has broad powers, *Rasheed v Chrysler Corp,* 445 Mich 109, 133-134; 517 NW2d 19 (1994), we find that plaintiff suffered no prejudice in the trial court's treatment of this matter. Any error that may have occurred was harmless.

## II. WETLAND PROTECTION ACT

The primary purpose of the WPA is to ensure that wetland habitats are preserved and protected. *Harkins v Dep't of Natural Resources,* 206 Mich App 317, 321; 520 NW2d 653 (1994). The act requires that the DNR issue a permit before a landowner uses land in a manner that affects a wetland as defined under the act. *Id.* Exemptions from the permit requirement are provided in § 6 of the act. The exemption at issue in this case requires no permit for:

> (h) *Maintenance, operation or improvement which includes straightening, widening, or deepening* of the following which is necessary for the production or harvesting of agricultural products:
>
> &ast; &ast; &ast;
>
> (ii) That portion of a drain legally established pursuant to the drain code of 1956 . . . which has been constructed or improved for drainage purposes. [MCL 281.706(2)(h)(ii); MSA 18.595(56)(2)(h)(ii). Emphasis added.]

The trial court never definitively ruled that wetlands existed in the area of the Philp Drain, although the parties sharply disputed this issue during the evidentiary hearing. Rather, the trial

court assumed that wetlands were present, but found the drain project was exempted from the permit requirement under the noted exception. It noted that the Philp Drain served two functions: it served as a drain for the surrounding farmland and as an outlet for other county drains that emptied into it. The court found that both sides' testimony established that the drain was not currently fulfilling these functions. It also determined from the testimony that the project was necessary to alleviate flooding in the area. Thus, it held that the project, including dredging Willow Creek both within the established Philp Drain and downstream from the established drain, as well as constructing the 1,200-foot extension branch, constituted maintenance and improvement of an existing drain. Therefore, the project fell within the exception to the WPA's permit requirement. Plaintiff argues on appeal that the lower court misinterpreted the exception, particularly the words "maintenance, operation or improvement."

A fundamental rule of statutory construction is that the Legislature is presumed to have intended the plain meaning of words used in a statute. *Attorney General v Sanilac Co Drain Comm'r,* 173 Mich App 526, 531; 434 NW2d 181 (1988). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Nelson v Grays,* 209 Mich App 661, 664; 531 NW2d 826 (1995). When a statute does not define a term, the term will be construed according to its common and approved usage; resort to dictionary definitions is appropriate to construe undefined terms. *Id.* Matters of statutory construction are reviewed de novo. *Madison, supra* at 358.

Plaintiff argues that the above exception to the permit requirement limits the words "maintenance, operation, or improvement" to the three

activities specifically mentioned in the statute: straightening, widening, and deepening. Because the project proposed to *extend* the Philp Drain, as well as *add* the 1,200-foot Philp Branch Drain, plaintiff contends that the project exceeds what is permitted by the exception and consequently requires a permit under the WPA.

Plaintiff's analysis ignores the word "includes." The exception states that no permit is required for a drain's maintenance, operation, or improvement, which *includes* straightening, widening, or deepening. According to *Webster's Third New International Dictionary* (3d ed), the word "include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." The Legislature's use of the word "includes" in the statute indicates that the words "straightening, widening, and deepening" are examples, but are not the exclusive activities, that constitute maintenance, operation, or improvement of an established drain.

In *Battjes Builders v Kent Co Drain Comm'r,* 15 Mich App 618; 167 NW2d 123 (1969), a case that preceded the WPA, the plaintiffs sought to enjoin the construction of a county drain. They argued that the project, which proposed to enlarge and expand a natural creek designated as a drain, should have been established under § 4 of the Drain Code for the establishment of a new drain, and not under § 2 of the Drain Code for improvement of an existing drain. This Court rejected that argument and held that the project was merely improving an old drain, not establishing a new drain. *Id.* at 622-623.

Likewise, in this case, we affirm the trial court's finding that the extension of the Philp Drain further down Willow Creek, the construction of the 1,200-foot Philp Branch Drain, and the dredg-

ing and deepening of the entire drain constitutes maintenance and improvement of an existing drain. The project constitutes maintenance because it will allow the Philp Drain to continue fulfilling its two functions: to drain the surrounding farmland and to provide an outlet to other county drains that empty into it. The project is also an improvement, because it will allow the drain to more effectively alleviate flooding in the area. Accordingly, we find that the trial court did not err in ruling that the drain project was exempted from the permit requirement of the WPA.

### III. INLAND LAKES AND STREAMS ACT

The ILSA is a regulatory act limiting construction and other activities that may adversely affect Michigan lakes and waterways. It requires a permit from the DNR before any construction as outlined in the act is initiated. *Attorney General v Sanilac Co Drain Comm'r, supra* at 530. An exemption from the permit requirement is provided in § 4(g) of the act, MCL 281.954(g); MSA 11.475(4) (g):

> A permit shall not be required for:
>
> *   *   *
>
> (g) Maintenance and improvement of all drains legally established or constructed prior to January 1, 1973 . . . .

Plaintiff's only issue under the ILSA is whether the project falls under this maintenance and improvement exception to the permit requirement. The trial court used the same analysis it employed for the WPA exception. It found that the extension of the Philp Drain further down Willow Creek, as well as the addition of a 1,200-foot branch drain,

constituted maintenance and improvement because the testimony established that, without these changes, the drain would be unable to fulfill its functions as a drain or as an outlet for the drains that emptied into it.

We affirm the trial court's finding that the Philp Drain project proposed by defendants was excepted from the permit requirements of the ILSA. The project constitutes maintenance and improvement of the Philp Drain, a drain that was established before 1973; consequently, no permit is required under the ILSA.

### IV. MICHIGAN ENVIRONMENTAL PROTECTION ACT

Finally, plaintiff contends that the trial court erred in holding that it did not establish a prima facie case under the MEPA. Under the MEPA, state and local governments, as well as private individuals and entities, may maintain an action for the protection of the air, water, and other natural resources from pollution, impairment, or destruction. MCL 691.1202 MSA 14.528(202). A prima facie case is established if the lower court finds (1) that a natural resource was involved and (2) that the impact of the activity on the environment rose to the level of impairment that justifies an injunction. *Dafter Sanitary Landfill v Dep't of Natural Resources,* 198 Mich App 499, 503-504; 499 NW2d 383 (1993). Four factors must be considered in determining whether judicial intervention is justified: (1) whether the natural resource involved is rare, unique, or endangered, or has historical significance; (2) whether the resource is easily replaceable; (3) whether the proposed action will have any significant consequential effect on other natural resources; and (4) whether the direct or

consequential impact on animal or vegetation will affect a critical number, considering the nature and location of the wildlife affected. *Id.*

Regarding the first prong of the prima facie case, the trial court found that the parties did not dispute that natural resources were involved, including shore birds, amphibians, reptiles, animals, fish, and vegetation. It then analyzed all four factors under the second prong of the prima facie case. It found speculative plaintiff's opinion about the negative effects of the project on the area, because plaintiff had not conducted thorough on-site inspections. It found the defense witnesses credible because they lived along the drain and had daily contact with it. These witnesses supported defendants' position that the natural resources involved were in no way unique, rare, endangered, or of historical significance; that the wildlife whose habitats were destroyed could be replaced or transplanted; that the project actually improved the water quality and increased the fish and wildlife populations; and that the project's erosion and filtering devices would maintain the banks of the creek.

Upon review of the record, giving due deference to the trial court's assessment of the credibility of the witnesses, *Arco Industries Corp, supra* at 410, we hold that the trial court's factual findings are not clearly erroneous, and therefore we affirm its findings. Plaintiff has failed to establish a prima facie case under the MEPA.

Affirmed.