VOLKEMA v DEPARTMENT OF NATURAL RESOURCES

Docket No. 159820. Submitted February 16, 1995, at Grand Rapids. Decided October 20, 1995, at 9:10 A.M. Leave to appeal sought.

Russell H. and Lois J. Volkema brought an action in the Court of Claims against the Department of Natural Resources, seeking compensation for a six-acre portion of a parcel owned by the plaintiffs that allegedly was rendered useless and of no value as a result of its classification as wetlands subject to the provisions of the Wetland Protection Act, MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*, and the refusal of the defendant to issue the permits necessary to allow the plaintiffs to fill a portion of the wetlands so that it could be used for a commercial development. On stipulated facts, the court, William E. Collette, J., found that the relevant parcel to consider in determining whether the restrictions placed on the wetlands constituted a taking was the undeveloped 24.6-acre parcel on which the wetlands were located and held that because the 24.6-acre parcel was not rendered economically useless by the classification of and the restrictions placed on the wetlands portion, there was no taking in the constitutional sense of the wetlands portion and no need for compensation by the defendant. The plaintiffs appealed, and the defendant cross appealed.

The Court of Appeals *held:*

1. A taking of property such as will require just compensation occurs if a landowner's property either is invaded physically or is regulated "too far." Compensation is required where a land-use regulation either does not advance substantially a legitimate state interest or denies a landowner all economically viable use of the land. However, compensation is not required where the land-use regulation merely results in a diminution of the property's value.

2. Because the parties have not raised the question whether the regulation at issue substantially advances a legitimate state interest, the sole question at issue is whether the plaintiffs

REFERENCES

Am Jur 2d, Eminent Domain §§ 157-173, 478-507; Pollution Control §§ 452, 516.

See ALR Index under Eminent Domain.

were denied all economically viable use of their land. That question turns on what parcel is to be considered in determining economic viability, because it is clear that if only the six-acre wetlands parcel is considered, the plaintiffs have established that the wetlands alone have been rendered economically useless by the regulation, but is equally clear that if either the plaintiffs' undeveloped 24.6-acre parcel or the original fifty-acre parcel owned by the plaintiffs is considered as the appropriate parcel on which to base the determination, there has merely been a diminution in value of the larger parcel as a result of the regulation.

3. The trial court properly used the present 24.6-acre undeveloped parcel containing the wetlands as the relevant parcel in considering whether the property has been rendered economically useless. The court properly refused the defendant's suggestion that the appropriate parcel to consider was the original fifty-acre parcel, because the developed portion of the larger parcel had been developed before the enactment of the Wetland Protection Act. Because the 24.6-acre parcel retains a substantial value even if the plaintiffs are not able to use the six-acre wetlands parcel as part of any commercial development, the regulation results only in a diminution of value and, thus, is not a taking in the constitutional sense. The court properly determined that the plaintiffs were not entitled to compensation for the diminution in value of their property.

Affirmed.

SAWYER, J., dissenting, stated that the appropriate parcel to consider is the six-acre wetlands parcel that is directly subject to regulation and that, considering the wetlands alone, those lands have been rendered economically useless to the plaintiffs, rendering the regulation of those lands a taking, and, thus, requiring that the plaintiffs be compensated for their loss as a result of the regulation of their land. Accordingly, the trial court erred, its judgment should be reversed, and the matter should be remanded to the trial court for the purpose of determining the appropriate compensation.

CONSTITUTIONAL LAW — INVERSE CONDEMNATION — TAKING — ECONOMIC USE.

A taking of property such as will require just compensation occurs if a landowner's property is either physically invaded or regulated too far; compensation is required where a land-use regulation either does not advance substantially a legitimate state interest or denies a landowner all economically viable use of the land; compensation is not required where the land-use

regulation merely results in a diminution of the property's value.

Russell H. Volkema, in propria persona.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Thomas J. Emery,* Assistant in Charge, and *Kevin T. Smith,* Assistant Attorney General, for the defendant.

Amicus Curiae:

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland* and *David E. Pierson*), for Michigan Association of Realtors.

Before: NEFF, P.J., and SAWYER and MARKEY, JJ.

NEFF, P.J. Plaintiffs appeal, and defendant cross appeals, from an order of the circuit court denying plaintiffs relief with respect to their inverse condemnation claim. We affirm.

I

Plaintiffs purchased approximately forty-five acres of commercial property in Kentwood in 1963 and an additional contiguous five-acre parcel in 1979. Plaintiffs made various improvements to the property, sold parcels of the property, and leased a ten-acre parcel to a water park operator. After the sales and lease, 24.6 acres remained, which are the subject of the present litigation. Plaintiffs sought to have the water park developed on the remaining 24.6 acres in conjunction with the leased ten acres. The water park has a plan that eventually calls for the purchase of the property. However, the 24.6-acre parcel includes some lowlands, which have been classified as protected wetlands under

the Wetland Protection Act, MCL 281.701 *et seq.*;
MSA 18.595(51) *et seq.*, which was enacted in 1980.
Defendant denied plaintiffs' request for a permit to
fill 4.3 acres of wetlands. Plaintiffs now seek com-
pensation for the six acres they claim are rendered
useless by the denial of the fill permit.

The trial court determined that the relevant
parcel to consider in determining whether there
was a taking is the remaining 24.6-acre parcel.
The trial court determined that because only ap-
proximately one-quarter of the property was af-
fected, there was no taking.

II

On appeal, the parties present a number of
arguments, all of which essentially raise the same
issue, namely, whether there was a taking. Be-
cause we conclude there was none, we affirm the
trial court's decision.

A

1

It is now well-established under constitutional
doctrine that a taking of property requiring just
compensation may occur if a landowner's property
is either physically invaded or regulated "too far."
See *Lucas v South Carolina Coastal Council,* 505
US 1003, 1014; 112 S Ct 2886; 120 L Ed 2d 798
(1992). Although the Supreme Court has declined
to definitively state what "too far" is, two circum-
stances exist in which compensation is afforded the
property owner without a case specific inquiry. *Id.*
at 1015.

The first category in which compensation is
automatically awarded is where the government
physically invades a landowner's property. *Id.* This

case, however, does not present such a circumstance, and thus any case law or arguments of the parties based on a physical invasion of property are irrelevant to this appeal.

The second distinct category in which compensation is automatically awarded is where a regulation denies all economically beneficial or productive use of one's land. *Id.* In other words, the Fifth Amendment right to just compensation is violated when a land-use regulation either (1) does not substantially advance a legitimate state interest, or (2) denies a landowner all economically viable use of his land in contravention of the property owner's investment-backed expectations.[1] *Id.* at 1016.

This is not to suggest that compensation is always awarded. When a land-use regulation merely results in diminution in a property's value, the property owner is not entitled to compensation. *Id.* at 1018. The justification for this rule is often stated as being that

> [g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law . . . . [*Id.*]

2

After a review of the parties' appeal and cross appeal, it is apparent that neither party here is arguing that the land-use regulation at issue does not substantially advance a legitimate state interest. Accordingly, we express no opinion with regard to that matter and assume, for the purposes

---

[1] An exception to this rule exists: a state government may always regulate land pursuant to its common law regarding nuisances. *Id.*

of this appeal, that the regulation does advance a legitimate state interest.[2]

Thus, the only question that must be answered here is whether plaintiffs were denied all economically viable use of their land. The answer to this question depends on what parcel of land is used to compare plaintiffs' before and after property values.[3] In other words, if we focus only on the six acres that plaintiffs claim were rendered economically useless by the Wetland Protection Act, then plaintiffs have established that they were deprived of all the economically beneficial use of their land. If, however, we use some larger parcel, say the 24.6-acres that encompasses the six acres, or the fifty acres that previously made up all of plaintiffs' property, then all plaintiffs have established is a mere diminution in value, and although they still might be eligible to obtain compensation for the loss, they would fall outside the categorical entitlement to such compensation.[4] See *Lucas, supra* at 1019, n 8.

We have found two cases to be instructive in making this determination.

B

1

In *Loveladies Harbor, Inc v United States,* 28

---

[2] In presuming the validity of this enactment, we recognize that a broad range of governmental purposes and regulations satisfy the requirement that the laws must advance a legitimate state interest. See *Bevan v Brandon Twp,* 438 Mich 385, 398; 475 NW2d 37 (1991). We also note that the validity of the Wetland Protection Act is presumed and that, on the basis of the record below, plaintiffs have not met their burden of overcoming this presumption. *Id.*

[3] The record demonstrates that plaintiffs had an investment-backed expectation in the property in question.

[4] Although the Supreme Court's opinion in *Lucas* settled some aspects of takings law, it expressly declined to answer the question before us today, i.e., which parcel should be used as a denominator in regulatory takings causes of actions. *Id.* at 1016-1017, n 7. Thus, we must look elsewhere for the answer to that question.

F3d 1171 (CA Fed, 1994),[5] Loveladies originally owned 250 acres of land adjacent to wetlands. In 1972, after Loveladies developed approximately 199 acres, § 404 of the Clean Water Act, 33 USC 1344, was enacted, and Loveladies was forced to obtain a permit to fill in the remaining land in accordance with their overall development plan. In the following years, New Jersey, the state in which the land was located, and Loveladies entered into negotiations to allow Loveladies to develop the remaining fifty-one acres. Ultimately, Loveladies agreed to essentially donate 38.5 acres to the state, in order to allow 12.5 acres to be filled and developed. The state accepted this plan.

Unfortunately for Loveladies, the permit process also required obtaining approval from the Army Corps of Engineers. Apparently the corps traditionally follows the state's recommendation, and, although New Jersey had previously granted the state permit, it recommended to the corps that it deny the federal permit. The corps followed New Jersey's recommendation. *Id.* at 1174.

Loveladies sued the United States, claiming that a compensable regulatory taking had occurred because it was denied all economically feasible use of the 12.5 acres of land. The United States disagreed, arguing that Loveladies merely suffered a diminution in its property's value, comparing the 12.5 acres with either the original 250 acres, or the fifty-one acres remaining after the 1972 amendment in the law. Thus, as here, one of the main issues before the court was how much of Loveladies' land to use as a comparison to the affected parcel to determine the extent of Lovela-

[5] The court's opinion in *Loveladies,* in concise yet complete detail, lays out the history of the law of regulatory takings and successfully puts into perspective the effects of *Lucas* on the development of the law in this area. The court in *Loveladies* then specifically addresses the issue presented here and brings that issue into sharp, clear focus.

dies' loss. Otherwise stated, the court in *Loveladies* was called on to determine the denominator parcel.[6] *Id.* at 1179.

The court of appeals began its discussion by eschewing any bright-line test to determine the denominator parcel and instead held that a flexible approach designed to account for factual nuances of each individual case should be used. *Id.* at 1181.

The court then examined the factual nuances of the case before it and held that the 199 acres that had been developed before the enactment of § 404 of the Clean Water Act should not be considered as part of the denominator because no effort had been made by the state to regulate that land. *Id.* The court then determined that the 38.5 acres that had, in essence, been dedicated to the state should not be part of the denominator because it had no value to Loveladies. *Id.* Thus, the court was left with the 12.5 acres of land affected by the corp's permit denial. Because the court found the remaining value to be so small as to be useless, it concluded that Loveladies was denied all economically viable use of the property, thus entitling it to compensation under *Lucas, supra.*

2

Here, employing a similar analysis, we conclude that the denominator should not consist of the

─────────

[6] The court in *Loveladies, supra* at 1180, n 13, cited *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US 470, 497; 107 S Ct 1232; 94 L Ed 2d 472 (1987), in which the Court defined the "denominator parcel" in the following manner:

"Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property 'whose value is to furnish the denominator of the fraction.'"

entire forty-five acres originally owned by plaintiffs because approximately half of that land already had been developed before the enactment of the Wetland Protection Act.

Examining the remaining 24.6 acres, we see no reason to exclude some eighteen acres of that land as part of the denominator in determining plaintiffs' loss. This case is in stark contrast with *Loveladies, supra,* to the extent the court in *Loveladies* determined that only the affected 12.5 acres in question had value to Loveladies. Here, the entire 24.6 acres is admittedly of high value to the plaintiffs. In other words, although plaintiffs lost the use of approximately six acres of the remaining 24.6-acre parcel, the land, when viewed as a whole, continues to have substantial value and may still be used in the manner intended by plaintiffs, i.e., it may be developed for commercial purposes.

Accordingly, the trial court properly concluded that plaintiffs' loss should be considered in light of the 24.6 acres, not merely the affected six acres.

C

*Bevan v Brandon Twp,* 438 Mich 385; 475 NW2d 37 (1991), also supports our conclusion here. In *Bevan,* the plaintiffs owned two parcels of lakefront property but were restricted by a zoning ordinance to being able to develop only one house on the two parcels. Although the plaintiffs argued that because of the restriction they were denied all economically feasible use of one of the parcels, our Supreme Court disagreed, holding that both of the parcels must be examined as a whole to determine the plaintiffs' loss. *Id.* at 396-397.

The Court relied on two United States Supreme Court opinions, *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US 470; 107 S Ct 1232; 94 L Ed

2d 472 (1987), and *Penn Central Transportation Co
v New York City,* 438 US 104; 98 S Ct 2646; 57 L
Ed 2d 631 (1978),[7] to support its ultimate conclu-
sion that when determining whether a taking has
occurred, the "plaintiffs' land, and the full bundle
of property rights associated with it, must be
viewed in its entirety," *Bevan, supra* at 397.

### D

Accordingly, on the basis of squarely applicable
precedent of the Supreme Courts of both the
United States and Michigan, we conclude that the
trial court properly considered the panoply of
plaintiffs' remaining property rights, rather than
merely a portion of those rights, in determining
the extent of the Wetland Protection Act's effect
on plaintiffs' property. In other words, the court
correctly used the 24.6-acre parcel as the denomi-
nator in determining the extent of plaintiffs' loss.

### E

We also conclude that the trial court did not err

---

[7] With regard to *Penn Central,* the United States Supreme Court in
*Lucas, supra,* suggested that New York's determination that all of
Penn Central's holdings in the area could be used as the denominator
was unsupportable. The Court in *Penn Central,* however, did not rely
on that determination. Instead, the Court focused on the property in
question and the alleged total loss of airspace rights when it stated:

> "Taking" jurisprudence does not divide a single parcel into
> discrete segments and attempt to determine whether rights in
> a particular segment have been entirely abrogated. [438 US
> 130.]

Thus, while it may be argued that the extent of New York's
decision in *Penn Central* was unsupportable, it cannot be gainsaid
that the Supreme Court approved the concept of viewing an affected
property as a whole. We conclude it would be contrary to the holding
in *Penn Central* to extract portions of a property and examine those
portions piecemeal when determining the effect of a land-use regula-
tion on the property.

in determining that plaintiffs were not entitled to compensation for the diminution in the value of their property. See *Lucas, supra* at 1019, n 8. Plaintiffs have failed to show that their property either is unsuitable for use because of the Wetland Protection Act or is now unmarketable. *Bevan, supra* at 403. Indeed, as plaintiffs acknowledge, their land, even as regulated, is still worth more than $600,000, and the majority of it may still be developed for commercial purposes. Accordingly, we find no error in this aspect of the trial court's conclusion.

### III

In sum, we conclude that the trial court properly determined the extent of plaintiffs' loss by considering how the land-use regulation in question affected plaintiffs' rights to their property as a whole, rather than by examining the effect of the regulation on only the affected six acres. Employing this analysis, we also agree with the trial court that the mere diminution in the value of plaintiff's property is not compensable.

Affirmed.

MARKEY, J., concurred.

SAWYER, J. *(dissenting).* I respectfully dissent.

The majority correctly looks to the United States Supreme Court's decision in *Lucas v South Carolina Coastal Council,* 505 US 1003; 112 S Ct 2886; 120 L Ed 2d 798 (1992), for guidance. However, the majority fails to appreciate the ramifications of the *Lucas* decision.

In *Lucas,* the Supreme Court reiterated the rule that where regulation denies all economically beneficial or productive use of land, a taking occurs

and the owner is entitled to compensation. *Id.* at
1016. The *Lucas* Court found a taking where a
state statute prohibited building on the plaintiff's
beach-front property. The instant dispute involves
the question raised, but not directly answered, in
*Lucas,* namely, whether all the economic use of all
of plaintiffs' property must be deprived by the
regulation before there is a taking or whether it is
sufficient that a portion of plaintiffs' parcel is
denied all of its beneficial use because of the
taking.[1] The Court commented on this question in
*Lucas, id.* at 1016, 1017, n 7:

> Regrettably, the rhetorical force of our "depriva-
> tion of all economically feasible use" rule is
> greater than its precision, since the rule does not
> make clear the "property interest" against which
> the loss of value is to be measured. When, for
> example, a regulation requires a developer to leave
> 90% of a rural tract in its natural state, it is
> unclear whether we would analyze the situation as
> one in which the owner has been deprived of all
> economically beneficial use of the burdened por-
> tion of the tract, or as one in which the owner has
> suffered a mere diminution in value of the tract as
> a whole. (For an extreme—and, we think, unsup-
> portable—view of the relevant calculus, see *Penn
> Central Transportation Co v New York City,* 42
> NY2d 324, 333-334; 366 NE2d 1271, 1276-1277
> (1977), aff'd 438 US 104 [98 S Ct 2646; 57 L Ed 2d
> 631] (1978), where the state court examined the
> diminution in a particular parcel's value produced
> by a municipal ordinance in light of total value of
> the taking claimant's other holdings in the vicin-
> ity.) Unsurprisingly, this uncertainty regarding
> the composition of the denominator in our "depri-

---

[1] This appears to be the basis of the dispute between the parties
concerning whether the remaining 24.6-acre parcel should be consid-
ered or whether the original fifty-acre parcel should be considered in
analyzing whether there was a taking. However, it is not relevant
which of those two parcels is viewed. Rather, the focus is on the 4.6-
acre parcel that forms the subject of the regulation.

vation" fraction has produced inconsistent pro-
nouncements by the Court.

While the Supreme Court was able to avoid the
question in *Lucas* because it was undisputed that
Lucas was denied the beneficial use of all of his
property by the regulatory taking, that question
cannot be avoided·in the case at bar. If either the
remaining 24.6-acre parcel or the original fifty-
acre parcel is viewed as a whole, then it is clear
that plaintiffs have not been denied all economic
use of their property because the property is usa-
ble with the exception of approximately 4.3 to 6
acres of wetlands and surrounding area. On the
other hand, if we focus on the wetland parcel
itself, plaintiffs are denied the economic use of
that property inasmuch as the denial of the fill
permit precludes them from developing and mak-
ing use of that parcel.

In reaching its decision, the majority finds sup-
port in *Bevan v Brandon Twp,* 438 Mich 385; 475
NW2d 37 (1991). In *Bevan,* our Supreme Court
concluded that there was no taking where a zoning
ordinance had the effect of allowing the property
owner to build only one house on two contiguous
lots.[2] Our Supreme Court concluded that in deter-
mining whether a taking existed, the property
must be viewed as a whole. *Id.* at 397. However, I
do not believe that *Bevan* is controlling for two
reasons.

First, the Michigan Supreme Court's decision in
*Bevan* was rendered before the United States Su-
preme Court's decision in *Lucas.* Accordingly,
there is a question whether *Bevan* remains good
law. The viability of the decision in *Bevan,* more-

_____

[2] The reason for the restriction was that the property was accessible
only by an easement that was twenty feet wide while a zoning
ordinance required a road with a right of way of sixty-six feet in
width if it was servicing two or more houses.

over, is additionally questionable because of *Bevan's* strong reliance on the United States Supreme Court's decision in *Penn Central, supra.* Indeed, the Michigan Supreme Court directly cites *Penn Central* in support of the proposition that the property must be viewed as a whole. However, when the United States Supreme Court decided *Lucas* the following year, it disavowed that view expressed in *Penn Central,* declaring that view to be "extreme" and "unsupportable." 505 US 1017, n 7.

Moreover, even if we were to defer to the Supreme Court to address the question of the continuing viability of *Bevan* in light of *Lucas,* I do not believe that *Bevan* is relevant to the disposition of the case at bar. In *Bevan,* the property owner was not denied the beneficial use of all of his property, or even a portion of his property. Rather, he merely was restricted with respect to the extent to which he could use and develop the property. That is, unlike the case at bar, the property owner in *Bevan* could build a single-family detached house, the intended use of the lots, anywhere he wanted on either of the lots involved. He merely was precluded from building two houses, one on each lot, as he had intended. Therefore, the property owner was able to use all of his property, though not in the manner he desired. In the case at bar, however, the property owner enjoys no such freedom. The effect of the Wetland Protection Act, MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.,* and of defendant's denial of a fill permit is to preclude utterly the use of a portion of plaintiffs' property. Plaintiffs are not free to choose what portion of their property to develop. Rather, the regulation allows development of a specific portion of the property and absolutely precludes the development of another portion of the property.

The majority's strong reliance on *Loveladies Harbor, Inc v United States,* 28 F3d 1171 (CA Fed, 1994), is somewhat mystifying inasmuch as that court ruled in favor of the property owner. Ultimately, like *Lucas,* it avoided a clear determination on partial takings, concluding that a full taking had occurred. *Loveladies, supra* at 1182.

In sum, where there is a mere restriction on the extent of use of property, as was the case in *Bevan,* there is no taking. However, where a property owner is prohibited from making use of his property, or even a portion of the property, then there is a taking with respect to the identifiable portion which cannot be used. In short, in light of the strong historical protection of private property in this country and the constitutional mandate that the government may put private property to public use only after compensating the owner of that property, I believe that the question posed in *Lucas* is best answered by concluding that a taking occurs where a regulation precludes the use of an identifiable, discreet piece of property, even if that property forms only a portion of a larger parcel. I do not find it relevant how large a portion of property the owner possesses. What is relevant is that the government has determined that a public purpose would be served by denying the rightful owner of the property the use of that property and requiring it to be used, or in this case not used, in accordance with that public purpose. While the government is permitted to do this, it must compensate the property owner for putting the property to public use. Our historical protection of private property in the constitution allows no less.[3]

---

[3] It should be noted that the conclusion that there is a taking does not necessarily compel the conclusion that there must always be compensation. Compensation is, of course, required for the value taken. If the property is utterly worthless, then there is no value

For the above reasons, I would conclude that the trial court erred in determining that there was no taking. Rather, the trial court should have determined that a taking occurred by the denial of the fill permit under the Wetland Protection Act and should have proceeded to determine the amount, if any, of compensation due plaintiffs.

---

taken and no need for compensation. Similarly, if the cost of filling the property and rehabilitating it to the point that it can be developed would exceed the value of the property once it is rehabilitated, then nothing of value is taken. However, we are not called upon in this appeal to address the issue of the amount of compensation, rather only whether there was a taking. I would conclude that there was a taking, but leave it for the trial court to determine the amount, if any, of compensation that is due.