K & K CONSTRUCTION, INC v DEPARTMENT OF NATURAL
RESOURCES

Docket No. 168393. Submitted December 13, 1995, at Lansing. Decided
June 4, 1996, at 9:00 A.M. Leave to appeal sought.

K & K Construction, Inc., and others brought an action in the Court of
Claims against the Department of Natural Resources, alleging and
seeking damages for a regulatory taking of private property result-
ing from the defendant's denial of an application under the Wetland
Protection Act, MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*, for a
permit to build a restaurant on a portion of the property. The
eighty-two-acre property consisted of four distinct parcels. Parcel
1, on which construction of the restaurant was proposed, covered
fifty-five acres and was zoned for commercial use. Parcels 2, 3, and
4 were zoned for residential use. In denying the permit, the DNR
determined that twenty-eight acres of parcel 1 were protected wet-
lands. The plaintiffs submitted a second permit application, which
came to be known as the Goga plan, under which they proposed to
fill the affected wetlands but convert a dry area of parcel 1 into
wetlands. That application was also denied by the DNR. The court,
William E. Collette, J., determined that a regulatory taking of parcel
1 had occurred, that a temporary taking had occurred with respect
to that portion that could be developed under the Goga plan, and
that § 21(4) of the Wetland Protection Act, MCL 281.721(4); MSA
18.595(71)(4), which limits recovery to twice the state equalized
value of the property taken, was unconstitutional. The court
awarded damages for the property taken and for the property tem-
porarily taken, plus interest. The DNR appealed.

The Court of Appeals *held*:

1. US Const, Am V and Const 1963, art 10, § 2 provide that pri-
vate property may not be taken for public use without just compen-
sation. Land-use regulation that in the public interest denies an
owner all economically beneficial or productive use of the owner's
land does not constitute a taking that requires just compensation if
principles of nuisance and property law would also prohibit the use
that is proscribed by the regulation. In this case, where no princi-
ple of nuisance or property law prohibits construction of the pro-
posed restaurant, the Court of Claims correctly determined that a

taking that requires just compensation had resulted from the denial of the permit.

2. The Court of Claims did not clearly err in concluding that all of parcel 1, as opposed to the entire property or the wetlands portion of parcel 1, was taken in light of the four distinct parcels and their zoning.

3. The Court of Claims did not clearly err in concluding that the denial of the permit denied the plaintiffs all economically beneficial or productive use of parcel 1.

4. The DNR's subsequent decision to approve the Goga plan did not relieve it of its duty to provide compensation for the period of the temporary taking.

5. The Court of Claims correctly determined that MCL 281.721(4); MSA 18.595(71)(4) violates US Const, Am V and Const 1963, art 10, § 2 in limiting compensation for a taking to twice the state equalized value of the property. Just compensation, which is that amount that places a property owner in a condition as good·as the owner would have been had the taking not occurred, is a judicial determination that is not subject to legislative restriction.

6. The damages awarded by the Court of Claims were not excessive.

Affirmed.

1. EMINENT DOMAIN — REGULATORY TAKINGS — JUST COMPENSATION.

Land-use regulation that in the public interest denies an owner all economically beneficial or productive use of the owner's land constitutes a taking that requires just compensation if principles of nuisance and property law do not also prohibit the use that is proscribed by the regulation (US Const, Am V; Const 1963, art 10, § 2).

2. EMINENT DOMAIN — TEMPORARY TAKINGS — JUST COMPENSATION.

No subsequent action by a government whose activities have created a taking of all use of a property can relieve it of the duty to provide compensation for the period during which the taking was effective (US Const, Am V; Const 1963, art 10, § 2).

3. EMINENT DOMAIN — WETLANDS — JUST COMPENSATION.

Section 21(4) of the Wetland Protection Act, which limits compensation for a taking of private property for public use to twice the state equalized value of the property, is an unconstitutional legislative restriction upon the judicial determination of just compensation, which should be in an amount that places the property owner in a condition as good as the owner would have been had the taking not occurred (MCL 281.721[4]; MSA 18.595[71][4]; US Const, Am V; Const 1963, art 10, § 2).

*Robert L. Bunting* and *Karen Russell*, for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *A. Michael Leffler* and *Kevin T. Smith*, Assistant Attorneys General, for the defendant.

Amicus Curiae:

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland, David E. Pierson,* and *Jeffery V. Stuckey*), for Michigan Association of Home Builders.

Before: JANSEN, P.J., and TAYLOR and J. P. NOECKER,* JJ.

JANSEN, P.J. This is a regulatory takings case. Defendant Department of Natural Resources appeals as of right from a September 8, 1993, judgment of the Court of Claims in plaintiffs' favor. The Court of Claims determined that a taking had occurred as a result of defendant's decision to deny plaintiffs' application for a permit to build a restaurant on a parcel of land on the basis that the land was protected wetlands. The Court of Claims awarded $3,245,256 for the property taken, plus interest of $1,574,522.60, and $459,400 for a temporary taking of part of the land. We affirm.

I

Plaintiffs own approximately eighty-two acres of property in Waterford Township in Oakland County. The property was acquired in 1976 by Joseph and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Elaine Kosik. J.F.K. Company is a Michigan limited partnership consisting of the five children of the Kosiks. J.F.K. Company is a part owner of the property through a quit-claim deed executed by the Kosiks. K & K Construction is a Michigan corporation, of which Joseph Kosik and one of his sons are the sole shareholders. K & K Construction has no ownership interest in the property involved in this case. Resorts and Company is a Michigan copartnership and is a part owner of the eighty-two-acre property.

The Court of Claims concluded that the property consisted of four distinct parcels. The parcel at issue was parcel 1, on which J.F.K. Company wished to build a C.J. Barrymore's Restaurant. Parcel 1 covered approximately fifty-five acres of the entire property. On May 28, 1988, plaintiffs applied for a permit to develop the property. On November 7, 1988, defendant denied the permit on the basis of a determination that approximately twenty-eight acres of the property was protected wetlands under the Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*

Plaintiffs then filed the present action on December 29, 1988, in the Court of Claims. Plaintiffs initially sought a declaratory ruling that the area is not wetlands and also sought injunctive relief against defendant's enforcement of the WPA and damages under the WPA. Plaintiffs sought a determination that defendant's actions constituted a taking of their property for which they were entitled to just compensation. On May 1, 1990, plaintiffs submitted a second application for a permit to fill approximately 3.17 acres of wetlands and to convert 5.36 acres of upland to wetlands. This plan was known as the "Goga Plan" and involved

a total of over seventy-two acres of property on parcels 1, 2, and 4. This second application was also denied on July 26, 1990.

Trial was held before the Court of Claims, sitting as the factfinder, on December 17, 1991. The only issue before the court was whether there was a taking because of the permit denial such that plaintiffs were entitled to just compensation. On November 2, 1992, the Court of Claims issued its opinion and order determining that a taking occurred because the wetlands restrictions rendered the property essentially worthless as commercial real estate, and that plaintiffs were therefore entitled to just compensation. After various postjudgment motions and consideration of the Goga Plan, the Court of Claims awarded a total of $5,279,178 in favor of plaintiffs.

II

Plaintiffs contend that defendant's actions of denying the permit to fill the wetlands constitute an unconstitutional taking of property without just compensation. The Fifth Amendment of the United States Constitution provides in part: "nor shall private property be taken for public use, without just compensation." Similarly, the Michigan Constitution provides: "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. The Takings Clause of the Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. *Dolan v City of Tigard*, 512 US ___; 114 S Ct 2309; 129 L Ed 2d 304, 315 (1994); *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184, n 10; 521 NW2d 499 (1994).

A

Property may be taken only when an essential nexus exists between a legitimate state interest and the taking. If the nexus exists, then there must be a "rough proportionality" between the manner of the taking and the actual state interest involved. *Dolan, supra,* p 317; *Peterman, supra,* p 201. The parties do not dispute that the state has a legitimate interest in preserving and protecting wetlands. See *Attorney General ex rel Dep't of Natural Resources v Huron Co Rd Comm'n,* 212 Mich App 510, 516; 538 NW2d 68 (1995) ("[t]he primary purpose of the WPA is to ensure that wetland habitats are preserved and protected"). Further, there is no dispute that an essential nexus exists between the legitimate state interest in this case (the preservation and protection of wetlands) and the taking (the land-use regulation). See *Harkins v Dep't of Natural Resources,* 206 Mich App 317, 324; 520 NW2d 653 (1994) ("the WPA unquestionably advances a legitimate state interest"). The crucial issue we face is whether there is a taking within the meaning of the Fifth Amendment to require just compensation.

The United States Supreme Court has explained that the Fifth Amendment is violated when land-use regulation does not substantially advance legitimate state interests *or* denies an owner economically viable use of the owner's land. *Lucas v South Carolina Coastal Council,* 505 US 1003, 1015; 112 S Ct 2886; 120 L Ed 2d 798 (1992). In land-use regulation cases, it has been recognized that while property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking. *Id.,* p 1014; *Volkema v Dep't of Natural Resources,* 214 Mich App

66, 69; 542 NW2d 282 (1995). The Supreme Court has not set a formula regarding what constitutes going "too far," but has engaged in ad hoc factual inquiries. *Lucas, supra*, p 1015.

However, there are two distinct categories of regulatory action that require compensation without case-specific inquiry. The first category encompasses regulations that compel the property owner to suffer a physical invasion of the property. The second category is where regulation denies all economically beneficial or productive use of the land. *Id.*, pp 1015-1019. The Court of Claims concluded that application of the WPA denied plaintiffs all economically beneficial or productive use of the land.

The United States Supreme Court has noted that "affirmatively supporting a compensation requirement . . . [are] regulations that leave the owner of land without economically beneficial or productive options for its use—typically . . . by requiring land to be left substantially in its natural state." *Id.*, p 1018. In *Lucas*, the Court held that where the state seeks to sustain regulation that deprives property of all economically beneficial use, the state may resist compensation only if an inquiry into the nature of the owner's property shows that the interests behind the proscribed use were not part of the title to begin with. *Id.*, p 1027. Thus, a regulation that prohibits all economically beneficial use of land cannot be newly legislated or decreed without compensation, but must inhere in the owner's title itself, with the restriction that background principles of state property or nuisance law may already place on land ownership. *Id.*, pp 1028-1029.

In the case before us, we reject defendant's claim that the permit denial was based on a fundamental principle of Michigan property law. Defendant claims that such a principle is found in our state constitution:

> The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction. [Const 1963, art 4, § 52.]

In *Lucas*, the Supreme Court made clear that the state must do more than proffer the legislature's declaration that the uses the landowner desires are inconsistent with the public interest. Rather, the state must identify background principles of nuisance and property law that prohibit the uses the landowner intends in the circumstances in which the property is found. *Lucas, supra,* pp 1030-1031.

The constitutional provision quoted above is not a principle of nuisance and property law. The decision to build a restaurant on land, or a request to fill in wetlands, does not constitute a nuisance that the government may abate. See *id.,* p 1029; *Miller Bros v Dep't of Natural Resources,* 203 Mich App 674, 682; 513 NW2d 217 (1994). We are not aware of any common-law principle preventing the building of a restaurant on plaintiffs' land. Thus, the generalized invocation of public interests in the state constitution, and the Legislature's declarations in the WPA and the Michigan Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.,* do not constitute background principles of nuisance and property law suffi-

cient to prohibit the use of plaintiffs' land without just compensation.

B

Defendant also contends that because the regulation, the WPA, was enacted before the quit-claim deed passed title to J.F.K. Company, plaintiffs are precluded from compensation. We do not agree that the timing of the regulation and ownership would act to preclude just compensation where it would otherwise be due. See *Nollan v California Coastal Comm*, 483 US 825, 833, n 2; 107 S Ct 3141; 97 L Ed 2d 677 (1987) (The landowners' rights were not altered because they acquired the land well after the commission had begun to implement its policy. As long as the commission could not have deprived the prior owners of the easement without compensation, the prior owners must be understood to have transferred their full property rights in conveying the lot.)

In this case, the property was acquired by Joseph and Elaine Kosik in 1976. They transferred the property through a quit-claim deed to J.F.K. Company in 1986. The WPA took effect in 1980. The passage of the WPA cannot be understood as depriving J.F.K. Company of just compensation merely because the WPA was in effect when the quit-claim deed was executed. Because we have concluded that the interests served by the proscribed use in this case do not inhere in the title itself, the timing of the regulation and the transfer of the land do not dictate that plaintiffs are not entitled to just compensation. *Lucas, supra*, pp 1027-1031.

C

Next, in order to determine if plaintiffs were deprived of all economically beneficial or productive use of their land, we must decide what specific property was affected by the permit denial. It is defendant's contention that the Court of Claims should have considered all eighty-two acres of the property in determining whether a taking occurred in this case. At trial, plaintiffs argued that the Court of Claims should consider only the twenty-eight acres that were declared to be wetlands. The Court of Claims rejected both contentions and found that it would consider the fifty-five acres designated as parcel 1. On appeal, plaintiffs urge us to affirm the Court of Claims' ruling. We find that the Court of Claims' factual finding in this regard is not clearly erroneous. MCR 2.613(C).

A proper resolution of this issue is not subject to any clear rule. In *Bevan v Brandon Twp*, 438 Mich 385, 393; 475 NW2d 37 (1991), our Supreme Court held that a person's property generally should be considered as a whole when deciding whether a regulatory taking has occurred. In *Bevan*, however, the property in question consisted of two contiguous parcels under the same ownership and subject to a single zoning scheme. In the case before us, parcel 1 is zoned for commercial use, while parcels 2, 3, and 4 are zoned for residential use. Further, there is no single owner of all four parcels. Parcel 1 is owned in part by J.F.K. Company, and parcels 2 and 4 are owned solely by J.F.K. Company. Parcel 3 is owned by both J.F.K. Company and Resorts and Company. Finally, the regulation in this case does not affect all four parcels. Only parcel 1 is affected by the WPA.

More recently, this Court relied on *Loveladies Harbor, Inc v United States*, 28 F3d 1171 (CA Fed, 1994), in analyzing a similar issue. See *Volkema, supra,* pp 71-72. In *Loveladies Harbor,* the plaintiffs originally owned 250 acres of land that had been acquired in 1958. By 1972, 199 acres of the land had been developed, before the enactment of § 404 of the Clean Water Act. 33 USC 1344. The plaintiffs sought a fill permit to develop the remaining fifty-one acres for residential use. The permit was initially denied, but the state eventually entered into an agreement whereby the plaintiffs could develop 12.5 acres of the land. However, the plaintiffs also had to seek permit approval from the Army Corps of Engineers. The corps ultimately denied the permit.

The court in *Loveladies Harbor* had to determine the "denominator parcel" in order to determine whether a taking had occurred. The court rejected any bright-line rule and instead adopted a flexible approach to account for factual nuances of each individual case. *Loveladies Harbor, supra,* p 1181. This approach was also recently adopted by this Court in *Volkema, supra,* p 73. The court in *Loveladies Harbor,* found that the 199 acres that had been developed before enactment of § 404 of the Clean Water Act should not be considered as part of the denominator because no effort had been made by the state to regulate that land. With regard to the remaining fifty-one acres, the court found that the 38.5 acres had been essentially given to the state in exchange for the permit to develop the remaining 12.5 acres. The court refused to include the 38.5 acres as part of the denominator because that land had no value to the plaintiffs. Thus, the court concluded that only 12.5

acres would be considered as the denominator, and that because the value was de minimis, the owner was deprived of all economically feasible use of the property and was entitled to just compensation. *Loveladies Harbor, supra,* pp 1181-1182.

In *Volkema,* this Court employed the same "factual nuances" analysis, but reached a different conclusion. The plaintiffs in *Volkema* bought forty-five acres of commercial property in 1963 and a contiguous five-acre parcel in 1979. The plaintiffs developed the property and were left with 24.6 acres at the time of the litigation. The plaintiffs sought a permit to fill 4.3 acres of wetlands, but that permit was denied. The plaintiffs sought compensation for the six acres they claimed were rendered useless because of the denial of the fill permit.

This Court held that it would not include the entire forty-five acres in the denominator because approximately half of that land was developed before enactment of the WPA. However, this Court held that it would consider the remaining 24.6 acres as the denominator, rather than the six acres as urged by the plaintiffs. In *Volkema,* the entire 24.6 acres was of high value to the plaintiffs, and the land, when viewed as a whole, continued to have substantial value because it could still be developed for commercial purposes. Thus, this Court concluded that the plaintiffs had suffered no taking where most of the land could be developed for commercial purposes. *Volkema, supra,* p 74.

In the present case, the Court of Claims properly considered only the fifty-five acres of parcel 1. Parcels 2, 3, and 4 are zoned for residential purposes, while parcel 1 is zoned for commercial uses. Parcel 3

was developed before plaintiffs first applied for the permit. Parcels 2 and 4 are not developed. Because of the differences in the zoning of the four parcels and the differences in their ownership, we conclude that the Court of Claims' factual finding that the fifty-five acres should be considered as the denominator is not clearly erroneous.

D

Defendant next contends, however, that even in light of the regulation, there was no taking because the property retained significant value. The Court of Claims found that parcel 1, as affected by the permit denial, was essentially worthless as commercial real estate. This factual finding is not clearly erroneous, given the evidence presented at trial.

The Court of Claims credited the testimony of plaintiffs' experts, who concluded that the property was essentially worthless. The Court of Claims discounted the conclusion of defendant's expert that the edges of the parcel could still be developed, because that conclusion was refuted by plaintiffs' experts. We note that the twenty-eight acres of wetlands is irregularly shaped within the fifty-five-acre parcel. Thus, it is not possible to simply leave the wetlands area undeveloped and build on the remaining twenty-seven acres. If the twenty-eight acres of wetlands was not developed, the only area that could be feasibly developed would be the edges of the area of parcel 1. This was apparently not economically feasible because of the land needs for a restaurant, including parking lots or any other commercially viable use. Thus, this case is unlike *Volkema* because there the plaintiffs could still use the remaining eighteen acres of over twenty-

four acres of property. Here, the plaintiffs could not develop the remaining twenty-seven acres because of the configuration of the wetlands within the parcel.

Accordingly, the Court of Claims did not err in concluding that the regulation in this case denied the owners all economically beneficial or productive use of the land. Thus, a taking occurred within the meaning of the Fifth Amendment and plaintiffs were entitled to just compensation for the fifty-five acres of land affected by the regulation.

III

Defendant next argues that the Court of Claims erred in rejecting its option to cure the taking by permitting implementation of the Goga Plan.

Plaintiffs first submitted an application on May 28, 1988, regarding development of parcel 1. On November 7, 1988, defendant denied a permit to develop the property because twenty-eight acres of the parcel were determined to be protected wetlands. Plaintiffs then filed their complaint on December 29, 1988. Thereafter, William Goga, a civil engineer retained by plaintiffs, developed a mitigation plan. He proposed that some wetlands be filled in parcel 1, but that wetlands could be created in the parcel from nonwetlands area. This plan was submitted to defendant in April 1990. Defendant rejected this plan and denied the subsequent permit application based on Goga's plan in July 1990.

Trial in this matter was held on December 17, 1991. On November 5, 1992, the Court of Claims issued an opinion and order in which it found that a taking had occurred because plaintiffs were denied all economically beneficial or productive use of the land because

of the permit denial. It was not until after this determination that defendant agreed to accept the Goga Plan. The Court of Claims issued a second opinion and order, dated May 4, 1993, which mainly dealt with various compensation issues. The Court of Claims specifically found that defendant was entitled to accept the Goga Plan pursuant to MCL 281.721(3)(c); MSA 18.595(71)(3)(c). This provision specifically allowed defendant to modify its action so as to minimize the detrimental effect to the property's value after the court determined that defendant's action constituted a taking. The Court of Claims found no objection to this approach. The Court of Claims then stated that those portions of the property defined as being part of the Goga Plan could be exempted from the taking, while those portions that were to be transformed into wetlands would be considered to be condemned.

In considering what constituted just compensation, the Court of Claims ruled that plaintiffs would be awarded interest and fair market value of the portion of land actually condemned. The court specifically did not include that portion of the land that could still be commercially developed under the Goga Plan. Thus, defendant's characterization of the Court of Claims' action as being a rejection of defendant's decision to accept the Goga Plan is not supported by the record.

Further, we cannot agree with defendant's contention that its decision to offer a permit for the Goga Plan eliminates the taking. The Court of Claims found, and we agree, that there was an unconstitutional taking in this case due to the regulation of the wetlands area. It was not until after a finding by the

Court of Claims that defendant decided to accept implementation of the Goga Plan. However, this action does not eliminate a taking. As the Court of Claims correctly determined, twenty-seven acres of the parcel were temporarily taken and twenty-eight acres were permanently taken.

In *First English Evangelical Lutheran Church of Glendale v Los Angeles Co*, 482 US 304, 321; 107 S Ct 2378; 96 L Ed 2d 250 (1987), the Supreme Court held that where the government's activities have created a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective. Such "temporary takings" are also entitled to just compensation.

Therefore, we find that the Court of Claims did not err in awarding compensation. The court properly found that there was a temporary taking concerning part of the land and a permanent taking concerning the remaining portion of the land. Thus, the court's order awarding compensation complied with MCL 281.721(4); MSA 18.595(71)(4) in that it found a temporary taking concerning part of the land that could be developed under the Goga Plan.

IV

Next, defendant contends that the trial court erred in finding MCL 281.721(4); MSA 18.595(71)(4) unconstitutional in that it violated the Just Compensation Clauses of the Fifth Amendment and Const 1963, art 10, § 2.

The Court of Claims did not err in finding that § 21(4) is unconstitutional because it limits plaintiffs' recovery to twice the state equalized value of the

property taken. Both the federal and state constitutions provide that private property cannot be taken for public use without just compensation. Just compensation means the full monetary equivalent of the property taken. *Almota Farmers Elevator & Warehouse Co v United States*, 409 US 470, 473; 93 S Ct 791; 35 L Ed 2d 1 (1973). Just compensation is that amount that places a property owner in a condition as good as the owner would have been had the taking not occurred. *Id.*; *Oakland Hills Development Corp v Lueders Drainage District*, 212 Mich App 284, 292-293; 537 NW2d 258 (1995).

The determination of the measure of just compensation for a taking is a judicial, not a legislative, question. *United States v Sioux Nation of Indians*, 448 US 371, 417, n 30; 100 S Ct 2716; 65 L Ed 2d 844 (1980), citing *Monongahela Navigation Co v United States*, 148 US 312, 327; 13 S Ct 622; 37 L Ed 463 (1893). Because the determination of the proper measure of compensation for a taking is solely a judicial question, the Legislature may not restrict the measure of just compensation in a takings case. *Baltimore & O R Co v United States*, 298 US 349, 368; 56 S Ct 797; 80 L Ed 1209 (1936). Thus, statutes that set forth the compensation rate for a taking, such as MCL 281.721(4); MSA 18.595(71)(4), are unconstitutional. See *Baltimore & O R Co, supra*; *Monongahela, supra*.

Because MCL 281.721(4); MSA 18.595(71)(4) mandates the method of computing just compensation for a taking, the Court of Claims correctly held that it is unconstitutional.

v

Last, defendant argues that the Court of Claims awarded excessive damages for the taking. We disagree.

The purpose of just compensation is to put property owners in as good a position as they would have been had their property not been taken from them. *Miller Bros, supra,* p 685. The public must not be enriched at the property owner's expense, but neither should the property owner be enriched at the public's expense. *Id.* There is no formula or artificial measure of damages applicable to all condemnation cases. The amount of damages to be recovered by the property owner is generally left to the discretion of the trier of fact after consideration of the evidence presented. *Poirier v Grand Blanc Twp (After Remand),* 192 Mich App 539, 543; 481 NW2d 762 (1992).

In avoiding a windfall to the property owner, the nature of the taking must be considered. Where there is a temporary taking, the just compensation awarded must reflect its temporary nature. *Miller Bros, supra,* p 687. This Court has recognized that money damages are recoverable for a temporary, unconstitutional taking. Courts should engage in a flexible approach in determining compensation for a temporary taking. Some factors to consider are: rental return, option price, interest on lost profit, before and after valuation, and benefit to the government. *Poirer, supra,* pp 544-545.

The Court of Claims awarded $3,245,256 and interest of $1,574,522.60 for the property taken. The Court of Claims also awarded $459,400 for the temporary taking of the property. The court's award of damages is based on the evidence presented and does not

appear to be an abuse of discretion. In this case, because of the difficulty in determining the fair market value of the land with the use restrictions placed on it, the court appears to have engaged in a flexible approach in computing damages. Defendant has not shown that the Court of Claims' computation of damages was erroneous or excessive.

Affirmed.