FRERICKS v HIGHLAND TOWNSHIP

Docket No. 192224. Submitted January 6, 1998, at Lansing. Decided March 13, 1998, at 9:10 A.M. Leave to appeal sought.

Donald and Phyllis Frericks brought an action in the Oakland Circuit Court against Highland Township, Highland Township Planning Commission, and Highland Township Board, seeking a declaration that the township's zoning ordinance was unconstitutional on its face and as applied to the plaintiffs' property. The plaintiffs also sought a declaration that the rezoning of their property was an unconstitutional taking of their property without compensation and challenged the validity of certain sections of the zoning ordinance. When the plaintiffs had purchased the hundred-acre parcel of land in Highland Township that is the subject of the litigation, the parcel had been zoned A-1, an agricultural district with a minimum lot size of ten acres. An application was submitted to the planning commission to have the parcel rezoned to R-1-B, a residential single-family district with a minimum lot size of 1-1/2 acres. The planning commission rejected the request for rezoning the parcel to R-1-B and, instead, recommended that the parcel be rezoned to R-1-A, a residential single-family district with a minimum lot size of three acres. The township board thereafter rezoned the parcel to R-1-A, which resulted in the plaintiffs bringing their action. At trial, the plaintiffs did not pursue the request to have the parcel rezoned R-1-B, but rather sought to compare the economic viability of a proposed development with twenty-nine lots that would be permitted under R-1-A zoning with a proposed development of 106 lots that would be permitted if the parcel were to be zoned R-1-C, a residential single-family district with minimum lot sizes of 20,000 or 25,000 square feet. The plaintiffs proceeded with proofs based on the assumption that the parcel could be rezoned R-1-C, despite the fact that, during the pendency of the proceedings before the planning commission, the township board had amended the zoning ordinance to prohibit the creation of new R-1-C districts. The defendants responded with proofs showing the economic viability of the development of the parcel under the R-1-A classification. The court, James J. McDonald, J., upheld the validity of the sections of the zoning ordinance relating to water distribution systems, setback requirements, and buildable area, found that the three-acre minimum lot size of the R-

1-A zoning classification was unreasonable and arbitrary because that lot size was not necessary to protect the township's legitimate concerns relating to pollution, septic systems, increased traffic, the adequacy of fire protection, and conformance with the master plan, found that the plaintiffs' proposed development of 106 lots was unreasonable, and upheld the validity of the amendment of the zoning ordinance that prohibited the creation of new R-1-C districts. The plaintiffs appealed, and the defendants cross appealed, but the cross appeal was subsequently withdrawn.

The Court of Appeals *held*:

1. The plaintiffs' contention that the provisions of the zoning ordinance that result in lake margins, flood plains, marsh and swamp areas, and areas with high water tables not to be counted toward meeting the minimum buildable area requirements of the ordinance were in conflict with the provisions of the former Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*, and thus preempted by that act, is rendered moot by the 1995 repeal of the act. However, the provisions of the WPA were reenacted as part of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30301 *et seq.*; MSA 13A.30301 *et seq.* To the extent that the township's indirect regulation of wetland areas through the operation of the buildable area provisions of the zoning ordinance imposes a more stringent restriction on wetlands than are encompassed in the NREPA, the zoning ordinance is unenforceable.

2. The Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, authorizes a township to exclude from the minimum buidlable area of a lot environmentally sensitive property, which includes wetland areas.

3. The plaintiffs did not demonstrate that the township's exclusion of wetlands from the calculation of the minimum buildable area of a lot constitutes a deprivation of substantive due process or results in a taking of their property such that they are entitled to compensation.

4. The plaintiffs failed to preserve for appellate review the question whether the requirement of the zoning ordinance that septic tanks or tile fields be located not less than four feet above the highwater mark of any groundwater located within 125 feet of the septic system is preempted by state and county regulation of the location of wells and septic systems.

5. The township's regulation of the minimum lateral distance that septic systems must be located from the highwater mark of any groundwater is a proper subject of a township zoning ordinance and is within the authority granted to townships by the TRZA.

6. The trial court did not err in finding that the township's regulation of the minimum lateral distance that a septic system can be located from the highwater mark of any groundwater was reasonable and was related to a legitimate concern to protect water resources.

7. The provisions of the zoning ordinance requiring a minimum vertical separation between the groundwater table and any inhabited structure or any septic system and excluding from the buildable area of any lot land less than a specified distance above the groundwater table are not preempted by the State Construction Code Act, MCL 125.1501 *et seq.*; MSA 5.2949(1) *et seq.*, which specifically excludes from the operation of the provisions of that act any ordinances and rulings related to zoning. Provisions relating to the location of structures and septic systems relative to groundwater are proper subjects of a township zoning ordinance and are authorized by the TRZA.

8. The plaintiffs have not properly preserved for appellate review the questions whether the groundwater provisions are reasonable or whether those provisions result in a taking of their property such that plaintiff's are entitled to compensation. In any event, the plaintiffs have shown neither that the provisions are unreasonable and arbitrary nor that they resulted in a taking of property.

9. The provision in the zoning ordinance that requires that a development having more than a specified number of lots or dwelling units and not being within the service area of a municipal water supply system include a water distribution system using a community well as a source of water is a proper subject of a zoning ordinance and is authorized by the TRZA. The plaintiffs failed to show that the water distribution system provision is arbitrary and unreasonable or that its application results in a taking of their property without compensation.

10. Because the plaintiffs did not challenge in the trial court the manner of the adoption of the amendment of the zoning ordinance that prohibited the creation of new R-1-C residential districts, the question of the manner of the adoption is not properly raised for the first time on appeal.

11. The restriction on the creation of new R-1-C districts was not arbitrary and unreasonable and was rationally related to the legitimate governmental interest of insuring a satisfactory range of housing types and lot sizes. The restriction did not have the effect of totally excluding lots of that size within the township, because the proofs established that there were existing vacant R-1-C lots throughout the township and there was no evidence that there was a demand for those lots.

12. The trial court properly found that the plaintiffs' proposed 106-unit development was not a reasonable and appropriate use of their parcel because of health risks associated with 106 separate wells and septic systems, the adequacy of existing roads, and fire protection. Accordingly, the trial court, upon finding that the three-acre minimum lot size of the zoned R-1-A was not reasonably related to any legitimate health or safety concerns, properly limited the remedy to a declaration that the existing zoning classification was unenforceable with respect to the plaintiffs' property and left to the township the freedom to rezone the property to a valid classification.

13. Because the trial court found that the plaintiffs could economically develop the parcel under the R-1-A classification, the zoning of the parcel as R-1-A did not result in a taking of the property for which the plaintiffs are entitled to compensation.

Affirmed.

1. ZONING — WETLANDS — TOWNSHIPS — BUILDABLE AREA.

A township may in its zoning ordinance exclude from the computation of the buildable area of a lot any land that is subject to state regulation as wetlands.

2. ZONING — GROUNDWATER — SEPTIC SYSTEMS — INHABITED STRUCTURES — TOWNSHIPS.

The horizontal and vertical proximity of septic systems and inhabited structures to the groundwater table is a proper subject of a township zoning ordinance.

3. ZONING — WATER DISTRIBUTION SYSTEMS — TOWNSHIPS.

A provision requiring construction of a water distribution system from a community well in multidwelling developments is a proper subject of a township zoning ordinance.

*Campbell, Keenan, Harry, Cooney and Karlstrom* (by *Richard A. Campbell*), for the plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Charles T. Harris* and *Robert E. Carr*), for the defendants.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

PER CURIAM. In this zoning dispute, plaintiffs appeal as of right from a judgment upholding the validity of several sections of Highland Township's zoning ordinance, but declaring that the rezoning of plaintiffs' property to R-1-A (residential single-family district with a minimum lot size of three acres) was invalid and providing that the Highland Township Board is free to rezone the property. Defendants cross appealed from the judgment and a separate order denying their motion for costs and attorney fees, but withdrew the cross appeal at oral argument. We affirm.

### I. UNDERLYING FACTS

Plaintiffs own a parcel of vacant land in Highland Township containing about one hundred acres with ponds and wetlands. When plaintiffs purchased the property on January 9, 1991, it was zoned A-1 (agricultural district with a minimum lot size of ten acres). At the same time, plaintiff Donald Frericks' company, Frericks Homes, Inc., filed an application with the Highland Township Planning Commission to have the property rezoned to R-1-B (residential single-family district with a minimum lot size of 1-1/2 acres). The planning commission rejected the request for rezoning to R-1-B and, instead, voted on April 21, 1991, to recommend rezoning the property to R-1-A (residential single-family district with a minimum lot size of three acres). The township board then voted on August 14, 1991, to rezone the property to R-1-A.

In response to the township board's decision, plaintiffs filed the instant action against Highland Township, the township board, and the planning commission, seeking a declaration that Highland Township's

zoning ordinance is unconstitutional on its face and as applied to plaintiffs' situation. Plaintiffs also sought a declaration that rezoning the property to R-1-A would be an unconstitutional taking of their property for which just compensation should be paid and challenged the validity of other sections of Highland Township's zoning ordinance.

At trial, plaintiffs did not pursue their request for rezoning to R-1-B. Instead, plaintiffs fashioned their proofs so as to compare the economic viability of a proposed development with twenty-nine lots under the approved R-1-A zoning for their property to a proposed denser development with 106 lots, which would fall within a zoning classification of R-1-C (residential single-family district with a minimum lot size of 25,000 square feet if adjacent to a major thoroughfare and 20,000 square feet in other locations), notwithstanding a recent amendment of Highland Township's zoning ordinance to prohibit the creation of future R-1-C residential districts. The amendment had been approved by the township board in June of 1991 (between the date on which Frericks Homes, Inc., filed an application for rezoning with the planning commission and the date on which the township board voted to approve the R-1-A zoning classification). By contrast, defendants suggested that a planned residential development under a zoning classification of R-1-A would be economically viable. Neither party's proposed development had actually been subjected to the local administrative review procedures set forth in the zoning ordinance for approving site plans.

Following the close of proofs with respect to the parties' proposed uses of the property and other

issues, the matter was adjourned for the parties to submit posttrial briefs with regard to the applicable law and proposed findings. The trial court then entered written findings of fact and conclusions of law. The trial court upheld the validity of certain sections of Highland Township's zoning ordinance relating to water distribution systems, setback requirements, and buildable areas. The trial court determined that the only basis that the plaintiffs had for relief was that the minimum lot size of three acres pursuant to the zoning classification of R-1-A was unreasonable and arbitrary because this lot size was not necessary to protect Highland Township's legitimate concerns about pollution, septic systems, increased traffic, the threat of inadequate fire protection, and conformance to the master plan. At the same time, the trial court found that plaintiffs' proposed development of 106 lots was unreasonable and upheld the validity of the amendment of the Highland Township zoning ordinance that prohibited the creation of new R-1-C lots. The trial court also declared that the township board was free to rezone plaintiffs' property.

## II. REGULATORY SECTIONS OF HIGHLAND TOWNSHIP'S ZONING ORDINANCE

We first address plaintiffs' claims concerning the validity of the sections of Highland Township's zoning ordinance relating to water distribution systems, setback requirements, and buildable areas. As a threshold matter, we note that the proceedings before the planning commission and township board during 1991 concerned only a rezoning request. Further, the trial evidence indicated that township proceedings regarding a rezoning request do not involve the type of

detail that would be involved at the site-plan review of a development by either the planning commission or the applicant. Nor do rezoning proceedings address whether variances would have been granted for plaintiffs, notwithstanding the fact that both variances and zoning ordinances are mechanisms used by local governments to regulate land. See generally *Paragon Properties Co v Novi*, 452 Mich 568, 574-575; 550 NW2d 772 (1996).

We do not agree with plaintiffs' position that variance mechanisms for regulating land are irrelevant in determining the scope of our judicial review. A land use variance is, in essence, a license to use property in a way that would not be permitted under a zoning ordinance. *Paragon Properties Co, supra* at 575. While we agree with plaintiffs' claim that article XX of Highland Township's zoning ordinance does not empower the Highland Township Board of Zoning Appeals to issue use variances,[1] we note that § 2004-2(a) specifically defines the phrase "use variance" as "1) any variance which permits a use not specifically permitted by this ordinance for the district in which it located, and 2) any variance which permits in an agricultural or residential district a residential use with a twenty (20) percent or greater reduction in the required lot or buildable area." Section 2004-2(c) provides that any other variance will be a dimensional variance and authorizes the Highland Township Board

---

[1] A township board of appeals possesses only those powers invested in it by statute or ordinance. *Kethman v Oceola Twp*, 88 Mich App 94, 102; 276 NW2d 529 (1979). Under MCL 125.290; MSA 5.2963(20), a township board of appeals shall hear and decide all matters referred to it or upon which it is required to pass under an ordinance adopted pursuant to the Township Rural Zoning Act, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.* Highland Township's zoning ordinance was enacted under this act.

of Appeals to approve dimensional variances upon a finding that strict application of the regulations will result in peculiar or exceptional practical difficulties.

We can discern no meaningful distinction between a "use" variance and a "dimensional" variance insofar as each allows landowners to use land in a manner that would not otherwise be permitted under a strict application of the zoning ordinance.[2] Hence, while the Highland Township Board of Zoning Appeals is not empowered to authorize a "use" variance in a zoning district classification that does not permit such a variance, the board of appeals can have an effect on particular allowable developments. This effect may include the specific regulatory requirements challenged by plaintiffs in this appeal.

In sum, this appeal requires this Court to determine the validity of certain sections of a zoning ordinance concerned with details of a site plan that have not yet been applied to plaintiffs' property or subjected to the township's variance procedures. We will not disturb the trial court's findings of facts unless clearly erroneous. MCR 2.613(C). However, we review questions of law de novo. *Westchester Fire Ins Co v Safeco Ins Co*, 203 Mich App 663, 667; 513 NW2d 212 (1994). Examined in this context, we are not persuaded that plaintiffs have demonstrated any basis for relief.

A. THE "NATURAL HAZARD AREA" REGULATION IN § 1714

The "natural hazard area" regulation challenged by plaintiffs is part of article XVII of Highland Township's

---

[2] We recognize that "use" variances could be granted for uses of land that could not properly be authorized by a "dimensional" variance.

zoning ordinance. Section 1700 of this article provides:

> Whenever any provision of this Ordinance imposes more stringent requirements, regulations, restrictions or limitations than are imposed or required by the provisions of any other law or ordinance, then the provisions of this Ordinance shall govern. Whenever the provisions of any other law or ordinance impose more stringent requirements than are imposed or required by this Ordinance, then the provisions of such law or ordinance shall govern.

Section 1714 establishes the natural hazard area regulation. The stated intent of this section is to "protect environmentally sensitive natural resources . . . from unnecessary developmental encroachment." The definition of "natural hazard areas" in § 1714-2 includes (a) lake margins, (b) stream valley flood plain areas, (c) permanent marsh and swamp areas, (d) high water table areas, and (e) steep land areas. Section 1714-3 provides that "[n]atural hazard areas shall not be counted toward meeting the minimum buildable area requirements of this ordinance." Section 1714-4 provides for the determination and location of natural hazard areas to be made during the site-plan review and other development application review. Further, § 1714 works in harmony with § 203.11 of article II (construction of language and definitions) of the zoning ordinance, which defines a buildable area of a lot as follows:[3]

---

[3] The required minimum buildable area of a lot in Highland Township is identical to the minimum lot size for the denser single-family residential districts between R-1-B (1-1/2 acres) and R-1-D (14,000 square feet). The minimum buildable area of the larger lots between R-1-AAA (minimum lot size of ten acres) and R-1-A (minimum lot size of three acres) is two acres. See §§ 504 to 509 of Highland Townships zoning ordinance.

> The buildable area of a lot shall be an area which is free of all public rights-of-way, all private road easements, all natural hazard areas (as established under the requirements of Section 1714 of this Ordinance) and any public utility easements which shall place limitations on overhead, surface or underground use or development. Local service easements which provide service directly to a lot and common drainage easements serving a lot or the subdivision in which a lot is located shall not be excluded from the calculations of the minimum buildable area for that lot. The buildable area of a lot shall be a minimum of six feet above the water table. It shall be of such configuration as to permit construction of a home and placement of an initial and a replacement septic field thereon.

On appeal, plaintiffs argue that § 1714 is invalid because it is preempted by state law. Although the trial court did not address the preemption argument in its opinion, we address this issue to the extent that it can be decided as a question of law because it was presented to the trial court in plaintiffs' posttrial brief. See *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 311; 497 NW2d 595 (1993) (the review of a question of law not resolved by the trial court is appropriate when the facts necessary for its resolution are present).

In Michigan, the following principles apply to the issue of preemption:

> A municipality may not enact an ordinance if (1) the ordinance directly conflicts with the state statutory scheme, or (2) the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation. *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977). Preemption may be established (1) where state law is expressly preemptive; (2) by examination of the leg-

islative history; (3) by the pervasiveness of the state regulatory scheme, although this factor alone is not generally sufficient to infer preemption; or (4) where the nature of the subject matter regulated demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. *Id.* at 322-324. [*John's Corvette Care, Inc v Dearborn*, 204 Mich App 616, 618; 516 NW2d 527 (1994).]

In the present case, plaintiffs specifically rely on the Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*, as establishing their claim of preemption. However, the Legislature repealed the WPA effective May 24, 1995. Further, the matter decided by the planning commission and township board in 1991 was only an application for rezoning. Because neither the planning commission nor the township board took action to enforce § 1714 of the Highland Township zoning ordinance, we find that plaintiffs' argument is moot and that the WPA is not applicable to any future actions that might be taken by Highland Township under § 1714. See *People v Greenberg*, 176 Mich App 296, 302; 439 NW2d 336 (1989) (an issue is moot when an event occurs that makes it impossible to fashion a remedy).

Although parties may not leave it to this Court to search for authority in support of their position, *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992), this Court may go beyond the issues raised on appeal and address issues that, in this Court's opinion, justice requires be considered and resolved. See *Beveridge v Shorecrest Lanes & Lounge, Inc*, 204 Mich App 466, 470-471; 516 NW2d 117 (1994). In this respect, we note that the WPA was reenacted by 1995 PA 59 in Part 303 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30301 *et seq.*; MSA

13A.30301 *et seq.*[4] Therefore, in the interest of justice, we address the question of preemption under the NREPA for the limited purpose of providing some guidance to the parties with regard to future actions that may arise concerning the "natural hazard area" regulation in Highland Township's zoning ordinance.

The NREPA defines a wetland in MCL 324.30301(d); MSA 13A.30301(d) as follows:

> "Wetland" means land characterized by the presence of water at a frequency and duration sufficient to support, and that under normal circumstances does support, wetland vegetation or aquatic life, and is commonly referred to as a bog, swamp, or marsh and which is any of the following:
>
> (i) Contiguous to the Great Lakes or Lake St. Clair, an inland lake or pond, or a river or stream.
>
> (ii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and more than 5 acres in size; except this subparagraph shall not be of effect, except for the purpose of inventorying, in counties of less than 100,000 population until the department certifies to the commission it has substantially completed its inventory of wetlands in that county.
>
> (iii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and 5 acres or less in size if the department determines that protection of the area is essential to the preservation of the natural resources of the state from pollution, impairment, or destruction and the department has so notified the owner; except this subparagraph may be utilized regardless of wetland size in a county in

---

[4] The NREPA has its own saving clause in MCL 324.102; MSA 13A.102, but the language is similar to MCL 8.4a; MSA 2.214. MCL 324.102; MSA 13A.102 states: "The repeal of any statute by this act does not relinquish any penalty, forfeiture, or liability, whether criminal or civil in nature, and such statute shall be treated as still remaining in force as necessary for the purpose of instituting or sustaining any proper action or prosecution for the enforcement of the penalty, forfeiture, or liability."

which subparagraph (ii) is of no effect; except for the purpose of inventorying, at the time.

The NREPA retains restrictions contained in the repealed WPA, MCL 281.708(4); MSA 18.595(58)(4), on the authority of a local unit of government to regulate wetlands. Specifically, MCL 324.30307(4); MSA 13A.30307(4) provides:

A local unit of government may regulate wetland within its boundaries, by ordinance, only as provided under this part. This subsection is supplemental to the existing authority of a local unit of government. An ordinance adopted by a local unit of government pursuant to this subsection shall comply with all of the following:

(a) The ordinance shall not provide a different definition of wetland than is provided in this part, except that a wetland ordinance may regulate wetland of less than 5 acres in size.

(b) If the ordinance regulates wetland that is smaller than 2 acres in size, the ordinance shall comply with section 30309.

(c) The ordinance shall comply with sections 30308 and 30310.

(d) The ordinance shall not require a permit for uses that are authorized without a permit under section 30305, and shall otherwise comply with this part.

Further, MCL 324.30308(1); MSA 13A.30308(1) specifies the time for compliance with statutory requirements by local units of government and the procedures to be employed by local units of government for processing wetland use applications.

In the case at bar, the parties presented no facts at trial concerning what measures, if any, Highland Township utilized to comply with statutory requirements. However, one of defendants' experts did testify that permits for filling in state-protected wetlands

would be issued by the state, rather than by Highland Township. Thus, as a practical matter, it appears (under Highland Township's regulatory scheme existing at the time of the trial) that a landowner could obtain a state permit to fill in a state-protected wetland area and that, upon doing so, the wetland would no longer fall within the definition of "natural hazard areas" under § 1714-3 of the zoning ordinance. If no permit was obtained, the zoning ordinance would operate in harmony with the NREPA by not permitting state-protected wetlands to be used as a buildable area. Further, § 1700 of the zoning ordinance ensures that any more stringent restrictions imposed by state law will govern. In other words, the zoning ordinance does not operate to regulate construction on state-protected wetlands because this issue is decided at the state level. The zoning ordinance excludes only unbuildable portions of the wetlands in determining the buildable area of lots.

Even if the zoning ordinance could be construed as imposing a more stringent restriction on wetlands than state restrictions, principles of preemption would only preclude Highland Township from determining whether construction on wetlands is permissible. These principles would not preclude Highland Township from excluding wetlands that are unbuildable under the state regulatory scheme and that fall within the definition of a "natural hazard area" in the zoning ordinance. To hold otherwise would lead to an absurd result—namely, Highland Township would need to call land a "buildable area" when it knows that the state will not allow it. In this instance, Highland Township does not "regulate" the wetland, but only takes notice of what is allowed. It follows that

the exclusion of state-protected wetland (for which no permit has been granted) from the "buildable area" is not preempted because it is not a regulation.

We note that there are nevertheless two difficulties with Highland Township's zoning ordinance, as existing at the time of the trial, that raise questions concerning its enforcement. First, the definition of wetland found in the NREPA, MCL 324.30301(d); MSA 13A.30301(d), is not identical to the language used in § 1714-2 of the zoning ordinance to define "natural hazard areas." Second, there is a difference between state and local regulations permitted under the NREPA, namely, the ability of a local unit of government to regulate wetlands of less than five acres in MCL 324.30307(4)(a); MSA 13A.30307(4)(a) without meeting the criteria in MCL 324.30301(d)(iii); MSA 13A.30301(d)(iii). The indirect effect of the regulation in § 1714-3 (that "[n]atural hazard areas shall not be counted toward meeting the minimum buildable area requirements of this ordinance") thus has the potential of operating to regulate wetlands contrary to the provision of MCL 324.30307(4); MSA 13A.30307(4) (that a "local unit of government may regulate wetland within its boundaries, only as provided under this part").

For these reasons, assuming that Highland Township has not yet taken steps to comply with the NREPA and has not amended § 1714 of the zoning ordinance, we believe that § 1714 is unenforceable, on its face, to the extent that § 1714 can be construed as defining and regulating wetlands in a manner that would operate outside the state regulatory scheme. Highland Township is not precluded from excluding wetlands determined to be unbuildable at the state level from

the "buildable area" allowable under the zoning ordinance. However, given the limited nature of our review, we express no opinion concerning the nature or extent that such "preemption" may have on plaintiffs' property.

We next turn to plaintiffs' claim on appeal that the "natural hazard area" regulation in § 1714 is not a proper subject of zoning. On the basis of the authority cited by plaintiffs, we construe the substance of plaintiffs' issue regarding this point as: whether the Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*,authorizes a township to exclude wetlands from the minimum buildable area of a lot for the purpose of protecting environmentally sensitive property. Plaintiffs failed to properly preserve this issue for appeal because it was not presented to the trial court in their posttrial brief. However, we will consider this claim to the extent that it presents a question of law for which the necessary facts are present. *Gillette Co, supra* at 311.

To ascertain legislative intent, a court must look to the purpose of the statute. *Addison Twp v Gout (On Rehearing)*, 435 Mich 809, 815; 460 NW2d 215 (1990). The purpose of the TRZA is to provide for the establishment of zoning districts within which the proper use of land and natural resources may be encouraged or regulated by ordinance. *Id.* at 815, n 5. MCL 125.271; MSA 5.2963(1) states, in part:

> The township board . . . may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of

residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. For these purposes, the township board may divide the township into districts of such number, shape, and area as it considers best suited to carry out this act. The township board . . . may use this act to provide by ordinance for the regulation of land development and the establishment of districts which apply only to land areas and activities which are involved in a special program to achieve specific land management objectives and avert or solve specific land use problems, including the regulation of land development and the establishment of districts in areas subject to damage from flooding or beach erosion, and for that purpose may divide the township into districts of a number, shape, and area considered best suited to accomplish those objectives. Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered, including tents and trailer coaches, and the specific uses for which dwellings, buildings, and structures, including tents and trailer coaches, may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures, including tents and trailer coaches; and the maximum number of families which may be housed in buildings, dwellings, and structures, including tents and trailer coaches, erected or altered. The provisions shall be uniform for each class of land or buildings, dwellings, and structures, including tents and trailer coaches, throughout each district, but the provisions in 1 district may differ from those in other districts.

Given the applicable law, we hold that Highland Township's exclusion of environmentally sensitive areas from buildable areas falls within these broad powers and, thus, constitutes a proper subject of zoning.

Plaintiffs next contend that defendants offered no evidence that the wetlands on their property would not be adequately protected by the state or that there would be any damage to or impairment of the wetlands. We decline to address this argument because plaintiffs have not explained the relevancy of this claim or supported it with citations of the record or supporting authority. *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n*, 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

Plaintiffs' next argument is that § 1714 does not substantially advance a legitimate state interest and that it is unreasonable because the WPA adequately protects wetlands. We construe the substance of plaintiffs' claim as a facial challenge to the validity of § 1714. Facial challenges attack the very existence or enactment of an ordinance. *Paragon Properties Co*, *supra* at 577. Although the trial court did not address this issue, we will consider it because the issue addresses a question of law and the necessary facts are present. See *Gillette Co, supra* at 311.

Plaintiffs' reliance on the now-repealed WPA to attack § 1714 confuses the concepts of preemption and substantive due process. Preemption means that a township should be precluded from enacting a zoning ordinance if it is in direct conflict with a state statutory scheme or if the state statutory scheme occupies the field of regulation which the township seeks to enter. *Detroit Edison Co v Richmond Twp,*

150 Mich App 40, 48-49; 388 NW2d 296 (1986). By comparison, a substantive due process claim requires the following proof: (1) that there is no reasonable governmental interest being advanced by the present zoning classification or (2) that an ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question. *Kropf v Sterling Heights*, 391 Mich 139, 158; 215 NW2d 179 (1974); *Scots Ventures, Inc v Hayes Twp*, 212 Mich App 530, 532; 537 NW2d 610 (1995). Three basic rules of judicial review are applicable:

> (1) the ordinance is presumed valid; (2) the challenger has the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property; that the provision in question is an arbitrary fiat, a whimsical ipse dixit; and that there is not room for a legitimate difference of opinion concerning its reasonableness; and (3) the reviewing court gives considerable weight to the findings of the trial judge. [*A & B Enterprises v Madison Twp*, 197 Mich App 160, 162; 494 NW2d 761 (1992).]

The existence of a state statutory scheme for wetlands presents an issue of preemption. However, it does not establish that no reasonable governmental interest is being advanced by § 1714 of the zoning ordinance. Hence, regardless of whether we consider plaintiffs' argument under the now-repealed WPA or the NREPA, plaintiffs have not met their burden of showing that the enactment or existence of § 1714 constitutes a deprivation of substantive due process.

Finally, plaintiffs contend that the enforcement of § 1714 will accomplish a permanent "taking" of their land for which they must be compensated. Again, this particular issue was not presented to the trial court

(although the trial court did consider a "taking" claim raised by plaintiffs relative to the rezoning of their property to R-1-A [minimum lot size of three acres]). The potential, collective effect of various regulations was merely one aspect of plaintiffs' proofs in support of their "taking" claim. Hence, we need not address this issue. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

In any event, were we to consider this issue, it is unclear whether plaintiffs are claiming that § 1714 is confiscatory on its face or as applied. An "as applied" claim challenges a present infringement or denial of a specific right or of a particular injury in the process of execution of government action. *Paragon Properties Co, supra* at 576. Unlike a facial challenge, an "as applied" challenge is subject to rules of finality in order to be ripe for judicial review. *Id.* at 576-577. See also *Countrywalk Condominiums, Inc v Orchard Lake Village*, 221 Mich App 19, 22; 561 NW2d 405 (1997). In the present case, because Highland Township has not yet enforced the "natural hazards area" regulation, plaintiffs' argument is not reviewable as an "as applied" challenge. Until this regulation is enforced and available procedures are followed in the township, it is not possible to determine the extent of any injury attributable strictly to an application of the "natural hazard area" regulation. *Paragon Properties Co, supra* at 580.

Furthermore, a "facial" challenge requires that plaintiffs demonstrate that the existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market. *Paragon Properties Co, supra* at 576. The United States

Supreme Court has indicated that use regulations effect a taking if they deny an owner an economically viable use of the regulated land. *Lucas v South Carolina Coastal Council*, 505 US 1003, 1016, n 6; 112 S Ct 2886; 120 L Ed 2d 798 (1992). This type of action is compensable without a case-specific inquiry into the public interest advanced in support of the restraint. *Id.* at 1015.

With regard to land-use regulations, a taking that requires just compensation may occur if regulations are over-reaching. *Volkema v Dep't of Natural Resources*, 214 Mich App 66, 69-70; 542 NW2d 282 (1995).[5] However, the availability of variances under a zoning ordinance may support a finding that an ordinance is not overly restrictive on its face. *Lake Nacimiento Ranch Co v San Luis Obispo Co*, 841 F2d 872, 877 (CA 9, 1987, amended 1988). In applying a "taking" analysis, the full bundle of property rights associated with land is generally viewed in its entirety. *Bevan v Brandon Twp*, 438 Mich 385, 395-397; 475 NW2d 37 (1991). But see *Volkema, supra* at 73-75 (only undeveloped portion of land viewed in its entirety in determining if taking occurred).

Plaintiffs' taking argument is based on the proposition that the regulation in question does not permit the use of a "natural hazard area" in computing density, while the county and state land-use regulations do permit the use of wetlands in computing density. Because plaintiffs cite no record evidence in support of their contentions, we need not consider this argument further. *Community Nat'l Bank, supra* at 520-

---

[5] A taking of property may also require just compensation when there is a physical invasion of property. *Volkema, supra* at 69. However, the instant case does not involve a physical invasion.

521. In any event, as we have already discussed, Highland Township's "natural hazard area" regulation is applied in determining the buildable area for lots. Therefore, we do not find that plaintiffs have identified any basis for holding that this regulation, standing alone, constitutes a compensable taking.

### B. THE SETBACK REGULATION IN § 1716

Plaintiffs next challenge the validity of the 125-foot setback requirement in article XVII, § 1716 of the zoning ordinance,[6] which states:

> No part of any inhabited structure, exclusive of footings, shall be constructed or occupied which shall be less than four (4) feet above the ground water table as determined at that site. No septic tank or tile field shall be constructed less than (4) feet above the ground water table at the site not closer than one hundred twenty five (125) feet from the high water mark of any subaqueous area.

Plaintiffs argue that this regulation is invalid because it is preempted by the exclusive jurisdiction of the state and county over wells and septic systems. However, plaintiffs failed to preserve this issue because it was not presented to or decided by the trial court. *Peterman, supra* at 183. We do not agree with plaintiffs' argument that presenting expert testimony concerning county or state standards (and how they differ from township standards) is sufficient to preserve this issue. The material question underlying a preemp-

---

[6] The setback requirement is also contained in the individual requirements for single-family zoning districts in chapter V of the zoning ordinance. For instance, for R-1-A (minimum lot size of three acres and minimum buildable area of two acres), § 506-4(b) contains the following minimum yard setback: "For residential accessory buildings, septic tanks and drain fields: . . . (4) From high-water line of subaqueous areas: 125 feet for septic tanks and fields."

tion issue is not whether the standards differ, but rather whether a particular unit of government can exclusively set the standard. Cf. *Palmer v Superior Twp*, 60 Mich App 664, 679-680; 233 NW2d 14 (1975).

We also find no support for plaintiffs' argument that this "preemption" issue was preserved because it was given substantial discussion in plaintiffs' posttrial brief. The question addressed in the posttrial brief was whether Highland Township's ordinance was unreasonable when compared to county and state regulations; the brief did not present an issue of legal preemption to the trial court. We note, however, that the legal basis of the preemption claim raised by plaintiffs is a provision in Article 12 of the Public Health Code, MCL 333.12103; MSA 14.15(12103), establishing the general powers and duties of the state department of public health. This provision does not address the placement of septic tanks and tile fields or otherwise establish that state law has preempted Highland Township from determining such placement. Given that this issue has not been preserved, we decline to consider it further. *In re Toler*, *supra* at 477.

Plaintiffs next challenge the validity of § 1716 on the ground that setbacks are not a proper subject of zoning. Specifically, plaintiffs claim that developing land is an activity rather than a use of the land. We address this issue because the trial court gave consideration to Highland Township's authority to enact zoning ordinances under the TRZA, MCL 125.271; MSA 5.2963(1). We hold, as a matter of law, that the setback regulation in § 1716 is a proper subject of zoning because it falls within Highland Township's authority under the TRZA to adopt a zoning ordinance

regulating land development, including "the area of yards . . . and the sanitary, safety, and protective measures that shall be required for the dwellings." *Id.*

Plaintiffs also challenge the reasonableness of § 1716. We construe this argument as one asserting a deprivation of substantive due process, rather than a "taking" claim. See *Bevan, supra* at 391. Because Highland Township has not yet had an opportunity to apply § 1716, any question concerning whether § 1716 is invalid, as applied to plaintiffs' property, is not ripe for judicial review. *Paragon Properties Co, supra* at 576. Therefore, we limit our review to the question whether § 1716 is facially invalid. While we review the trial court's ruling on this constitutional issue de novo, *Scots Ventures, Inc, supra* at 532, we give considerable weight to the findings of the trial court. *A & B Enterprises, supra* at 162. The burden of proof is on plaintiffs to show that § 1716 is invalid. *Id.*

Plaintiffs do not argue that the setback requirement advances no reasonable governmental interest. Instead, plaintiffs claim that the setback regulation is unreasonable and unnecessary because county and state regulations are adequate. We note, however, that there was testimony presented at the bench trial that Highland Township generally has extremely porous soil and that this factor justified adopting a setback requirement greater than county or state standards as an additional "safety" measure to protect water resources. Given this evidence, while there may be a difference of opinion concerning the need for a "safety" factor, we are not persuaded that the trial court erred in finding that the setback regulation in § 1716 was reasonable.

Finally, plaintiffs assert that, should the setback regulation be upheld, it constitutes a compensable "taking" of their land. Plaintiffs did not preserve this issue for appeal because, as with plaintiffs' claim regarding the "natural hazard area," plaintiffs did not present it to the trial court. We also note that review is unwarranted because plaintiffs give this issue only cursory treatment in their brief. See *Community Nat'l Bank, supra* at 520-521. In passing, however, we note that, to the extent that plaintiffs' claim can be construed as an "as applied" taking claim, it is not ripe for judicial review. *Paragon Properties Co, supra* at 576. Further, we find that plaintiffs have not identified a facial claim attributable solely to the setback regulation.

### C. THE WATER TABLE REGULATIONS IN §§ 1716 AND 203-11

Plaintiffs next challenge additional requirements concerning the natural hazard area and setback regulations. First, plaintiffs cite the following four-foot standards in § 1716 (elevation above water table) for constructing structures, tile fields, and septic tanks above a water table:

> No part of any inhabited structure, exclusive of footings, shall be constructed or occupied which shall be less than four (4) feet above the ground water table as determined at that site. No septic tank or tile field shall be constructed less than (4) feet above the ground water table at the site not closer than one hundred twenty five (125) feet from the high water mark of any subaqueous area.

Second, plaintiffs challenge a provision of the "buildable area" definition in § 203-11 that states: "The buildable area of a lot shall be a minimum of six feet above the water table."

Plaintiffs argue that these regulations are invalid because the State Construction Code Act, MCL 125.1501 *et seq.*; MSA 5.2949(1) *et seq.*, preempts them. This act directs the state construction code commission to adopt a state construction code that shall govern the construction and occupation of buildings and structures throughout the state. MCL 125.1504(1)-125.1504(2); MSA 5.2949(4)(1)-5.2949(4)(2). The State Construction Code Act and the state construction code apply to all governmental subdivisions of the state unless a subdivision exempts itself from part of the act and code by adopting and enforcing one or more appropriate nationally recognized codes. MCL 125.1508; MSA 5.2949(8). Under the section of the State Construction Code Act upon which plaintiffs rely in support of their preemption claim (MCL 125.1524; MSA 5.2949[24]), "construction regulations" adopted by a governmental subdivision are "repealed and invalid" except as provided for in MCL 125.1508; MSA 5.2949(8). However, a "construction regulation" is specifically defined in MCL 125.1502(m); MSA 5.2949(2)(m) to exclude "a zoning ordinance or rule issued pursuant to a zoning ordinance and related to zoning." This exclusion manifests a legislative intent to exclude from the coverage of the code ordinances that have as their purpose the implementation of zoning goals. See *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 580; 398 NW2d 393 (1986).

Two sections of a zoning ordinance enacted under the TRZA are at issue in the present case. Hence, we can resolve plaintiffs' preemption argument by determining whether the regulations in §§ 1716 and 203-11 are authorized by the TRZA. MCL 125.271; MSA

5.2963(1) gives the township board broad authority to regulate land development, including the location of structures that may be erected and the sanitary, safety, and protective measures that shall be required. Therefore, we hold that the TRZA authorizes the water table provisions of §§ 1716 and 203-11 and that, under either general principles for constructing statutes or preemption principles, plaintiffs' argument cannot succeed. See *John's Corvette Care, Inc, supra* at 618; *Detroit Edison Co, supra* at 48-49. In view of our determination that the TRZA authorizes these provisions, we also reject plaintiffs' argument that the water table provisions are not a proper subject of zoning.

Plaintiffs next challenge the reasonableness of the water table provisions in §§ 1716 and 203-11. Because plaintiffs give only cursory treatment of this issue in their brief and did not present this issue to the trial court, we need not address it. *Peterman, supra* at 183; *Community Nat'l Bank, supra* at 520-521. In any event, as with our analysis of the setback regulation in § 1716, we construe plaintiffs' argument as an unsuccessful facial challenge to the validity of the water table regulations under a theory of substantive due process. The evidence at trial indicated that the water table requirements protect homeowners from flooding and provide a separation between septic fields and ground water. Further, expert testimony supported the trial court's finding that Highland Township's four-foot and six-foot standards were reasonable. Although there may be a reasonable difference of opinion with regard to the appropriateness of these regulations, plaintiffs did not prove that the regulations were arbitrary and unreasonable on their

face. *A & B Enterprises, supra* at 162. Therefore, were we to address this issue, we would hold that plaintiffs did not meet their burden of overcoming the presumption that the water table regulations are reasonable.

Finally, plaintiffs assert that should the water table regulations be upheld, the regulations constitute a compensable "taking" of the land lying above the level wherein construction would be permitted under the state construction code. As with the other regulations the plaintiffs challenge, we need not consider this issue because it is given only cursory treatment in plaintiffs' brief and was not presented to the trial court. *Peterman,* supra at 183; *Community Nat'l Bank, supra* at 520-521. Additionally, we note that, to the extent that plaintiffs' claim can be construed as an "as applied" taking claim, it is not ripe for judicial review. *Paragon Properties Co, supra* at 576. Similarly, we find that plaintiffs have not identified a compensable, facial taking attributable solely to the water table regulations.

### D. THE WATER DISTRIBUTION SYSTEM REGULATION IN § 1720

Plaintiffs next challenge the validity of Article XVII, § 1720, of Highland Township's zoning ordinance. The stated intent behind § 1720 is to "regulate the development of and to establish the standards and specifications for water distribution systems in the Charter Township of Highland." Section 1720-1(g) defines a "water distribution system" as "[a]ll aspects of a complete system required to obtain or draw water from a groundwater source . . . ." Section 1720-1(b) defines a "community well" as a "source of groundwater serving more than one homeowner in a residential devel-

opment or more than one business in a commercial or industrial development." Section 1720-2(a) provides that the applicability of § 1720 shall include:

All new single family residential subdivisions, condominium projects or other developments proposed to contain more than the following number of lots, units or dwelling units:

19 lots - average lot size 14,000 to 19,000 sq. ft.

29 lots - average lot size 20,000 to 64,000 sq. ft.

39 lots - average lot size 65,000 to 130,679 sq. ft.

Section 1720-3 specifically requires that "[i]f a development is not located within the service area of a municipal water supply system, the development shall include a water distribution system using a community well as a water source." Other portions of § 1720 address the requirements for the approval of water systems.

Plaintiffs argue that a central water system regulation is invalid because it is not a proper subject of zoning and that there is no state statute that empowers townships to require central water systems. Because the TRZA expressly authorizes a township board to facilitate adequate and efficient provision for water and to promote public health, safety, and welfare, we hold that § 1720 was a proper subject of zoning. See MCL 125.271; MSA 5.2963(1).

Plaintiffs also challenge the reasonableness of § 1720. As with plaintiffs' other arguments concerning the reasonableness of the zoning ordinance, we treat this claim as a facial challenge based on a theory of substantive due process. Hence, plaintiffs must show either that no reasonable governmental interest is advanced by requiring a central water system or that

§ 1720 is purely arbitrary, capricious, and unfounded. *Kropf, supra* at 158; *A & B Enterprises, supra* at 162. The burden of showing that § 1720 is arbitrary and unreasonable rests upon plaintiffs. *A & B Enterprises, supra.* After reviewing the record, we find that plaintiffs have not satisfied their burden. Expert witnesses for both sides agreed that central water systems serve at least one legitimate governmental purpose—providing an adequate water support for fire protection. Additionally, other proofs indicated that the fire department's safety concerns were considered in the process of amending the zoning ordinance to require central water systems.

We also disagree with plaintiffs' contention that Highland Township's master plan establishes that § 1720 is unreasonable. The master plan clearly recognizes that central water systems exist and will continue to be developed. In any case, because the reasonableness of a zoning ordinance is determined in light of the zoning ordinance as it now stands, *Van Arsdel v Addison Twp*, 37 Mich App 613, 620; 195 NW2d 21 (1972), we consider the master plan only as a general guide for future development. *Bell River Associates v China Charter Twp*, 223 Mich App 124, 131; 565 NW2d 695 (1997). Moreover, the evidence regarding the concern for fire protection establishes that requiring a central water system for developments having certain densities substantially advances a reasonable governmental interest. Hence, giving weight to the trial court's findings, we hold that plaintiffs have not overcome the presumption that § 1720 is valid.

Finally, plaintiffs argue that, should § 1720 be upheld on reasonableness grounds, the application of

that section constitutes a compensable "taking" of their land because any development of their land becomes uneconomical. We need not address this issue because plaintiffs did not present it to the trial court and give it only cursory treatment in their brief. *Peterman, supra* at 183; *Community Nat'l Bank, supra* at 520-521. However, we again note that plaintiffs' claim is not ripe for judicial review as an "as applied" taking claim. *Paragon Properties Co, supra* at 576. Further, plaintiffs have not identified any basis for holding that the mere existence or enactment of a regulation for central water systems at certain density levels constitutes a compensable taking of property.

### III. PROHIBITION AGAINST NEW R-1-C RESIDENTIAL DISTRICTS

Plaintiffs' next argument is a challenge to the validity of an amendment of the zoning ordinance that prohibits the creation of new R-1-C residential districts. The amendment was adopted in 1991 by the township board. Having considered each of plaintiffs' contentions, we find no basis for relief.

#### A. PROCEDURES FOR ADOPTING THE AMENDMENT

Plaintiffs first challenge the manner in which the amendment of the zoning ordinance was adopted; plaintiffs argue that the amendment is invalid because it was given no more than cursory review. Because plaintiffs did not present this particular argument to the trial court, it is not properly before us. *Peterman, supra* at 183. However, we note that the record evidence does not support plaintiffs' contention. At best, plaintiffs have shown that members of the township board and planning commission had difficulty recollecting details about the amendment at the time of their depositions. It is apparent from other documen-

tary proof that the commission's decision to recommend the amendment and the board's decision to approve it occurred only after gathering information, holding public hearings, and considerable discussion of this issue. We also note that the case relied on by plaintiffs as support for their argument, *Certain-Teed Products Corp v Paris Twp*, 351 Mich 434, 448; 88 NW2d 705 (1958), did not address the adoption of a zoning ordinance or an amendment thereof. *Id.* at 452.

### B. SUBSTANTIVE DUE PROCESS

Plaintiffs' next challenge to the validity of the amendment relies on cases that address the standard of review for regulations enacted under the Township Ordinance Act (TOA), MCL 418.181 *et seq.*; MSA 5.45(1) *et seq.* See *Square Lake Hills Condominium Ass'n v Bloomfield Twp*, 437 Mich 310; 471 NW2d 321 (1991); *Natural Aggregates Corp v Brighton Twp*, 213 Mich App 287; 539 NW2d 761 (1995). Regulations enacted under the TOA are not subject to judicial intervention absent an abuse of discretion, excessive use of power, or an error of law. *Id.* at 294. Because the amendment was enacted under the TRZA, the TOA is irrelevant to our review of the validity of the amendment. However, the substance of plaintiffs' claim, as well as the trial court's decision with respect to this issue, appears to be based on constitutional principles relating to substantive due process. Hence, we will consider plaintiffs' claim in this context.

The question of the reasonableness of zoning ordinances that regulate the size of buildable lots is not new in this state. See, e.g., *Scots Ventures, Inc, supra* at 532. Zoning regulations are valid where there is a

" 'rational relation to the public health, safety, welfare and prosperity of the community' " and where the regulations are " 'not such an unreasonable exercise of [the police] power as to become arbitrary, destructive or confiscatory.' " *Christine Bldg Co v Troy*, 367 Mich 508, 516; 116 NW2d 816 (1962) (quoting *State v Hillman*, 110 Conn 92, 100, 105; 147 A 294 [1929]). Each case is evaluated according to existing facts and conditions rather than some condition that might exist in the future. *Christine Bldg Co, supra.*

In the case at bar, the trial court found that Highland Township's decision to prohibit new R-1-C lots was reasonable and that the decision had a "direct and substantial relation to the exercise of police power, the preservation of public health, safety, and general welfare of the community as a whole." The court noted:

> The evidence established that the township already has a number of vacant buildable R-1-C lots. There was no evidence presented that there was a demand for such lots. Furthermore, the evidence established that the township had a concern that the creation of additional R-1-C lots would place an undue burden on the existing roads, would lead to potential pollution because of the lack of sewers and water and could create fire protection problems.

Giving proper weight to the trial court's findings, we agree that the zoning ordinance was not arbitrary and unreasonable under the constitutional standard for substantive due process. While plaintiffs correctly argue that zoning ordinances regulate the use of land and buildings according to districts, areas, or locations, *Natural Aggregates Corp, supra* at 298, prohibiting the future creation of R-1-C residential districts comes within such land-use regulation. Further, set-

ting minimum lot sizes advances reasonable governmental interests related to the public health, safety, and general welfare.

Furthermore, we do not agree with plaintiffs' position that Highland Township should not consider health standards or concerns at the state or county level in determining minimum lot sizes. These concerns may present an issue with respect to preemption, that is, whether Highland Township is prohibited from regulating certain matters dealt with at the county or state level. However, because plaintiffs have not briefed any question concerning preemption relative to the amendment, we will not consider this issue. *In re Toler, supra* at 477. Hence, to the extent that Highland Township's zoning action is based on the same concerns present at the county or state level, we hold that the amendment to freeze R-1-C zoning advances reasonable governmental interests.[7]

We also reject plaintiffs' claim that the amendment contradicts Highland Township's master plan. As noted above, courts may consider a master plan as a general guide for future development. *Bell River Associates, supra* at 131. Plaintiffs correctly point out that Highland Township's master plan contains a policy to provide for a satisfactory range of housing types and parcel sizes. However, evidence at trial sug-

---

[7] In passing, we note that our holding is buttressed by evidence presented at the bench trial relating to other infrastructural concerns peculiar to Highland Township, such as inadequate roads, although the amendment also serves to maintain the rural character of the township. Cf. *Scots Ventures, Inc, supra* at 533-534 (majority found that ten-acre minimum lot size intended to preserve rural character of area was unreasonable, arbitrary, and capricious, but that five-acre lots could achieve this aesthetic goal). See also *Gackler Land Co, supra* at 572 (improving aesthetics of area advances reasonable governmental interest).

gested that such a choice was retained by freezing the R-1-C zoning classification (as well as by a previously frozen R-1-D zoning classification containing a minimum lot size of 14,000 square feet).

### C. EXCLUSIONARY ZONING

Plaintiffs next argue that Highland Township's prohibition against the creation of residential districts with a minimum lot size of less than 1-1/2 acres violates the following provision of the TRZA:

> A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful. [MCL 125.297a; MSA 5.2963(27a).]

Although the trial court did not specifically address this statute in its decision, we will address plaintiffs' claim because it was presented to the trial court in plaintiffs' posttrial brief and because the record is adequate to decide this issue. *Peterman, supra* at 183; *Gillette Co, supra* at 311.

Under MCL 125.297a; MSA 5.2963(27a), a zoning ordinance may not totally exclude a lawful land use where (1) there is a demonstrated need for the land use in the township or surrounding area and (2) the use is appropriate for the location. *English v Augusta Twp*, 204 Mich App 33, 37-38; 514 NW2d 172 (1994). In the present case, plaintiffs do not claim a total exclusion of lot sizes having a minimum size of less than 1-1/2 acres, but rather give weight to their own witnesses' testimony regarding the general need for lower-cost housing and the number of available

vacant lots. The trial court noted that there was uncontroverted evidence that a number of vacant buildable R-1-C lots already existed and that "[t]here was no evidence presented that there was a demand for such lots." We will not disturb a trial court's findings of fact unless they are clearly erroneous, giving due regard to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. MCR 2.613(C). Giving weight to the trial court's findings of fact, we hold that the zoning ordinance, as amended, does not constitute exclusionary zoning within the meaning of MCL 125.297a; MSA 5.2963(27a).

### D. REMEDIES

Plaintiffs next suggest to this Court that we grant an appropriate remedy. We find it unnecessary to decide this issue because plaintiffs have not established that the amendment to prohibit the creation of residential zoning districts with minimum lot sizes of less than 1-1/2 acres in Highland Township is invalid. Before a court orders a remedy, it must determine that the challenged township action is unlawful. Cf. *English, supra* at 39.

### E. TAKING

Finally, plaintiffs assert that Highland Township's denial of their proposed use constitutes a "taking." We need not decide this issue because plaintiffs have not briefed it. *Community Nat'l Bank, supra* at 520-521. However, we note in passing that the only matter decided by the planning commission and township board concerned the application of Frericks Homes, Inc., for rezoning to R-1-B. Plaintiffs did not ask the commission and board to rezone the property to a

classification having a minimum lot size of less than
1-1/2 acres, notwithstanding the fact that they filed
the application for rezoning with the commission
before the prohibition against rezoning to R-1-C.
Hence, construing plaintiffs' assertion as an "as
applied" taking claim, that is, a claim alleging a pres-
ent infringement or denial of a specific right or of a
particular injury in the process of actual execution,
we hold that the claim is not ripe for judicial review
because plaintiffs did not ask the board to apply the
prohibition against rezoning to R-1-C to plaintiffs'
property. *Paragon Properties Co, supra* at 576-577.

### IV. THE TOWNSHIP BOARD'S REZONING OF PLAINTIFFS' PROPERTY TO R-1-A

Plaintiffs next raise two issues concerning the
township board's 1991 decision to rezone their prop-
erty to R-1-A. For reasons we discuss below, we hold
that plaintiffs have no basis for relief beyond the trial
court's declaration that the R-1-A rezoning was unrea-
sonable and arbitrary and that the board is free to
rezone the property in accordance with *Schwartz v
Flint*, 426 Mich 295; 395 NW2d 678 (1986).

### A. SUBSTANTIVE DUE PROCESS

Plaintiffs first challenge the adequacy of the trial
court's remedy. We note that the trial court applied a
substantive due process analysis and that the trial
court's remedy was applicable to a situation where a
particular ordinance is found to be unconstitutional
as applied. *Schwartz, supra* at 325-326, & n 24. In this
situation, our Supreme Court has held that, after
declaring a zoning ordinance unconstitutional, a court
may provide relief in the form of a declaration that
the plaintiff's proposed use is reasonable (assuming

the plaintiff's burden to show reasonableness has been met) and an injunction preventing the municipality from interfering with that use. *Id.* at 329. The municipality would remain free to rezone consistent with the limiting conditions of the plaintiff's proposed use.[8] *Id.*

We note, however, that the *Schwartz* remedy does not excuse a landowner who has not demonstrated reasonableness from complying with all applicable federal, state, and local regulations or the site review process in a township. Hence, in looking to *Schwartz* to fashion a remedy for an unlawful exclusionary zoning of mobile-home parks where the plaintiff's proposed use was reasonable, this Court held in *English*, *supra* at 41:

> Thus, we remand this matter to the trial court with instructions to enter an injunction prohibiting defendant from interfering with plaintiffs' reasonable, proposed use of their property as a mobile-home park. *Schwartz*, *supra* at 329. However, we note that our decision does not exempt plaintiffs from complying with all applicable federal, state, and local regulations governing mobile-home parks. In particular, plaintiffs are not exempt from the site-plan review process. Further, plaintiffs may be required to contribute to certain costs for the construction and maintenance of the development's infrastructure. We express no opinion regarding such details, which may necessitate additional public hearings in the township and in the trial court.

The instant case presents a unique situation because plaintiffs' proposed 106-unit development for their property falls within the prohibited R-1-C residential district. For the reasons we discussed in part

---

[8] The municipality may not be so limited if the plaintiff's use is not declared reasonable. *Id.*

III of our opinion, plaintiffs have not demonstrated that this prohibition is invalid. Because a declaration that the R-1-A rezoning is invalid would not exempt plaintiffs from complying with other provisions of Highland Township's zoning ordinance, the unique facts of this case preclude the issuance of an injunction preventing defendants from interfering with plaintiffs' proposed 106-unit development. However, even assuming that this injunctive relief would be an appropriate remedy, the trial court properly refused on the ground that plaintiffs' proposed use was not reasonable.[9]

In its written opinion, the trial court considered five factors in finding that plaintiffs' specific, proposed use was not reasonable. First, the trial court expressed concerns regarding the health and pollution risks posed by 106 separate wells and septic systems. Second, the trial court found that the plaintiffs' proposal would violate Highland Township's master plan, that calls for 1-1/2- to 5-acre lots on plaintiffs' property. While we note that the trial court's finding was not entirely accurate because the master plan actually called for medium and small lots, with 1-1/2 to 5 acres being the primary development, the evidence does support a finding that plaintiffs' proposal would contravene the primary intent of the master plan. Third, the court considered the burden that a

---

[9] In the case at bar, there was no dispute in the proceedings below that plaintiffs' property should be rezoned to a single-family residential district. Further, while the rezoning question focuses on the reasonableness of the minimum lot size for plaintiffs' property as a single-family residential district, we note that plaintiffs' proposal went beyond this question by presenting a site plan with specifications relative to where homes would be built and addressing the possible effect of various regulations on how the property could be developed.

106-unit development might place on existing roads. Fourth, in view of the inadequacy of the nearby roads and plaintiffs' decision not to have a central water system, the trial court found that the plaintiffs' proposal would pose fire protection problems. Fifth, the trial court found that plaintiffs' request would violate a directive of the Oakland County Health Department that lots with septic systems have at least one-third of an acre for every bedroom. This finding is not entirely accurate in light of the trial evidence that the directive had been rescinded. However, the material question for purposes of fashioning a remedy for the invalid R-1-A classification is not whether specific details of plaintiffs' proposal should be approved, but rather the reasonableness of the density of plaintiffs' proposed development.

Giving weight to the trial court's findings and plaintiffs' burden of proof, we uphold the trial court's finding that plaintiffs' proposed 106-unit development was not reasonable. Hence, even assuming that injunctive relief to permit plaintiffs to develop their property under an R-1-C classification would be a possible remedy for the invalid R-1-A classification, we affirm the trial court's decision to limit the remedy to a declaration that the R-1-A classification was invalid. Accordingly, the township board is free to rezone plaintiffs' property in a legally permissible way.

B. TAKING

Finally, plaintiffs argue that they are entitled to compensation because the ordinances and regulations of Highland Township, as applied to their property, resulted in either a temporary or permanent taking of their land. Plaintiffs also argue that the trial court's

determination that the R-1-A classification was unreasonable and arbitrary with respect to plaintiffs' property establishes a compensable taking. We disagree with both contentions.

As a threshold matter in reviewing these claims, we note that the parties' proofs concerning this "taking" issue included proposed plans for developing plaintiffs' property under an R-1-A classification. Each plan considered the potential, collective effect of the regulations of Highland Township's zoning ordinance on the costs of the development. As we noted in part II of this opinion, plaintiffs' "as applied" taking claims are not ripe for review. Considering plaintiffs' taking claim in the context of the full bundle of rights associated with their property (see *Bevan, supra* at 395), we similarly hold that the question whether the rezoning of plaintiffs' property to R-1-A amounted to a "taking" is not ripe for judicial review. Without definitive action in Highland Township, it is not possible to determine accurately the actual effect of the township board's rezoning decision. *Paragon Properties Co, supra* at 578-580.

In any event, the parties presented conflicting evidence at trial concerning whether plaintiffs' property could be profitably developed if zoned R-1-A. The trial court found that plaintiffs could develop their property at a profit and that, while the profit may not be as great as the plaintiffs might like, R-1-A zoning would not preclude the use of the property for any reasonable purposes. As our Supreme Court stated in *Paragon Properties Co, supra* at 579, n 13, "[t]he Taking Clause does not guarantee property owners an economic profit from the use of their land." Hence,

giving weight to the trial court's findings, we reject plaintiffs' claim for compensation.

Affirmed.